Angelo J. **CEFALO** and Samuel Vullo,
Plaintiffs,

v.

Elwood **MOFFETT**, William Bunch and
International Union of District 50 Allied & Technical Workers, Defendants.

Civ. A. No. 1328–71.

United States District Court,
District of Columbia.

Aug. 18, 1971.

Preliminary injunction modified in
part, D.C.Cir., 449 F.2d 1193.

**1284**

David N. Webster, Earl C. Dudley, Jr., Paul M. Wolff, Washington, D. C., for plaintiffs.

Ross O'Donoghue, Washington, D. C., for defendant Moffett.

Joseph C. Wells, Washington, D. C., for defendant International Union of District 50, Allied & Technical Workers.

Winthrop A. Johns, Washington, D. C., for defendant International Union of District 50, Allied & Technical Workers.

Elliot Bredhoff, Michael H. Gottesman, George H. Cohen, Washington, D. C., counsel for Intervenor United Steelworkers of America.

Bernard Kleiman, Chicago, Ill., Albert Treherne, Washington, D. C., of counsel.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

PARKER, District Judge.

Plaintiffs having moved for a preliminary injunction restraining defendants, pending litigation of this case on the merits, from terminating the existence of Defendant District 50 by dissolution or merger with the United Steelworkers of America, AFL–CIO, and from presenting any plan for such dissolution or merger to the duly elected delegates of the International Fourth Constitutional Convention of District 50 to be held in Washington, D. C., August 23 through 25, 1971, Defendants and Intervenor Steelworkers having filed Oppositions thereto, and the Court having held a hearing on such Motion and Oppositions at which oral testimony and exhibits were offered by the parties and received by the Court, and the Court having before it depositions taken by the parties and affidavits, and having heard argument of counsel, the Court, after due deliberation, upon the entire record makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. Angelo Cefalo and Samuel Vullo, plaintiffs in this case, are members in good standing of District 50, Allied & Technical Workers of the United States

and Canada, a labor organization subject to the provisions of the Landrum-Griffin Act, 29 U.S.C. § 401 et seq.

2. Both plaintiffs complained of the wrongs which they now assert in this litigation to the Union and the Union took no action to redress these wrongs.

3. These plaintiffs have, therefore, exhausted their intra-Union remedies and this Court has jurisdiction to grant the relief requested pursuant to Section 501(b) of the Labor Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 501(b) (1964).

4. In August of 1970, a judgment in the amount of $8,000,000, which had been entered against District 50 in favor of the United Mine Workers, was reversed by the United States Court of Appeals, District of Columbia Circuit. Immediately thereafter "intensive" negotiations, looking to a merger between District 50 and United Steelworkers of America, resumed. These negotiations had earlier been suspended following the entering of the $8,000,000 judgment against District 50. (Moffett Dep. 34–35).

5. Agreement in principle that a merger would be effectuated along certain lines was reached in January 1971, and the lawyers for the respective Unions were then brought in to draft up the final agreement. (Moffett Dep. 43–44).

6. In February 1971, the draft of the agreement was circulated, which was generally similar to the final agreement as executed on April 24, 1971. (*Id.*, 59.) All these negotiations were conducted in secret. (*Id.* 36, 41–42.)

7. In early March 1971 the International Executive Board of District 50 approved a Call for a Constitutional Convention to convene on August 23, 1971. Mr. Moffett, Mr. John Badoud, and Mr. Marlin Brennan, the three signatories to the Call knew that this convention would consider and vote on the proposed merger, a fact made clear by the status of the negotiations and Moffett's statements to the International

Executive Board on April 24, 1971. (I. E.B. Minutes p. 121).

8. The convention was called in 1971 rather than 1975 when the next Constitutional Convention would ordinarily have been held because of a stipulation dated March 10, 1971, between the Secretary of Labor and District 50 in settlement of the case of Hodgson v. District 50, Civil Action 2864–70, a suit in which the Secretary of Labor sought to set aside the election of the International Executive Board at the 1970 Convention and Mr. Moffett's election as President following a protest from Moffett's defeated opponent, plaintiff Angelo Cefalo. The stipulation provided that new elections "shall" be held. That suit was brought pursuant to § 482 of the LMRDA which also gives courts authority to preserve the assets of the Union pendente lite. (Exhibit C to Motion for Preliminary Injunction.)

9. For several years plaintiff Cefalo and defendant Moffett have engaged in a power struggle for leadership of District 50. Since shortly after his loss of the May 1970 election Mr. Cefalo has been employed as an assistant to the President of the International Association of Machinists and Aerospace Workers, AFL–CIO, which is actively and successfully raiding the membership of District 50.

10. Mr. Moffett did not tell the Secretary of Labor of his plans to merge the Union out of existence at the proposed convention when the stipulation was entered into or when the Call to the Convention was being written.

11. On March 15, 1971 the Call to the convention was distributed to District 50 local unions.

12. In February 1971 at the insistence of the Secretary of Labor, the election of the International Officers which was to precede the convention was delayed until after the convention to enable Mr. Cefalo and five other District 50 members to appeal their pending expulsion to the convention in accordance with Art. XVI of the District 50 Consti-

tution. At the time of its proposal the Labor Department was not aware of the intention to vote on a merger at the Convention. In any event, the justification for this time arrangement was mooted when Cefalo's expulsion was preliminarily enjoined in Cefalo v. Moffett, et al., Civil No. 786–71 (D.D.C.) (Defendants' Exhibit 4.)

13. The convention, although it would ordinarily not have been held until 1975, is designated as a Constitutional Convention rather than a Special Convention which, under the Union Constitution, would require prior specification of the issues to be considered. But no mention was made of the proposed merger in the Call to the convention. Nevertheless, the following does appear in the Call:

a. The "purpose" of the convention is "electing International Union District 50 Executive Board members. * * *"

b. The Call also provides "This Convention will have authority to take appropriate action on all matters which may properly be submitted to the Convention."

c. Delegates to the convention were required to be elected in April 1971. (Exhibit F to Plaintiffs' Supplemental Memorandum).

14. At least part of the reason for holding the convention in August 1971 was the fact that the convention could consider the merger quicker than if the substitute convention were held as originally planned in 1972. Mr. Moffett admitted this choice of dates to his International Executive Board (I.E.B. Minutes, April 24, 1971 at 121).

15. Thus, the delegate selection process to be conducted in April to choose persons who would vote on a most important question—the continued existence of the Union—was deliberately approached by the small group of insiders at the international level without disclosing to the membership their special knowledge that a merger proposition would be presented for action at the Convention.

16. The existence of the merger agreement was presented to the International Executive Board of District 50 on April 24, 1971 and approved. Immediately after that meeting and on the same day the staff of District 50, over 300 in number, which had been called in from around the country, were told of the merger and had it explained to them by Mr. Moffett. No mailing of the merger agreement was conducted to the membership.

17. The May and June issues of District 50 News, distributed respectively on or about May 10th and June 10th, 1971, contained news stories about the proposed merger but the detailed terms of the merger agreement were not fully disclosed.

18. After this law suit was filed, the July 10, 1971 edition of District 50 News finally printed the merger agreement but did not disclose, even in summary form, the large pecuniary benefits which would flow to the staff of District 50.

19. Since delegates to the convention had to be elected in April, 1971 in the United States, the delegate selection process was totally completed by this time and, whether the figures of the Union or the plaintiffs are accepted, a decisive bloc of the votes at the convention are in the hands of the staff of District 50 who work at the national headquarters or in the field. However, the election of the delegates was supervised by the Secretary of Labor and duly certified.

20. If a local union does not have sufficient funds to pay the expenses of delegates from their local to go to the convention it may, under the Constitution of District 50—and it is quite common to do so—designate one of the field staff of District 50 as its delegate to the convention. This is one of the reasons why so many staff members of District 50 have delegate votes at the convention

and why, indeed, they control such a significant number.

21. Exhibit B to the merger agreement which has never been published in District 50 News or anywhere else lists the names of the field staff, their new rates of pay, and years of credited service towards the pension plan of the Steelworkers. These staff people, composed of regional directors, district directors, assistant directors, and union organizers, all subject to appointment by Mr. Moffett, will receive increases under the undisclosed portions of the merger ranging as high as 50%.

22. The staff people were present at a meeting following the Executive Board meeting on April 24, 1971 where their personal benefits were explained to them and they were exhorted to go out to each local and see to it that that local approved a form resolution which would "direct" that local's delegate to vote in favor of the merger. The Resolution is Exhibit I to Plaintiffs' Supplemental Memorandum. They were *not* given copies of the merger agreement to take to the local unions.

23. Paragraph 4 of that Resolution which was distributed to the staff to be taken to the local unions states that the local "[d]oes hereby AUTHORIZE and DIRECT its ' * * * Delegates * * * to approve * * * the Agreement of Merger * * *."

24. Uncontradicted testimony was presented that at least several locals refused to approve the Resolution because of inadequate information. The evidence revealed that insufficient notice was provided to the membership; that the opportunity provided all work shifts to vote on this important question was more restrictive than the usual provisions for voting on such issues; and that information concerning benefits to International officers, International Executive Board Members, and the International field staff was given only upon request, usually to a very limited degree, and occasionally not at all.

25. Both Mr. Moffett and the staff would benefit personally from the un-disclosed sections of the merger agreement. The staff will receive salary increases and pension rights and an increase per diem.

26. The 63 year old defendant Moffett is assured of a job with the Steelworkers for 5 years from September 1971 at his current salary of $28,500 per year plus a per diem of $6 per day for any of the 365 days of the year that he doesn't leave his home city and $12 per day plus expenses when he does leave home. He will be eligible for full retirement on a Steelworkers pension and will not have to run in an election against Mr. Cefalo.

27. The other International officers are continued in office for 5 years or until retirement. These private pecuniary benefits were not disclosed to the membership during the delegate selection process and it seems that they were not disclosed to the membership when the resolution directing the delegates to approve the merger was presented to the membership of the locals by a member of the staff.

28. The general membership of District 50 will be entitled to share in all the benefits of Steelworkers membership on an equal footing with all other members, including the right to strike relief from the Defense Fund, widespread technical and professional services, coordinated industry collective bargaining, and the support of a powerful organization. (Moffett Affidavit; Def. Exh. 10, pp. 9, 16–17, 21–23).

29. It is the apparent intention of the International Union's leadership never to submit the question of the merger to a secret ballot referendum vote of the membership. It is their intention only to submit it and obtain a simple majority of the delegate votes at the convention and then to effectuate the plan.

30. Thus the rank and file members, whose staff delegates to the convention were chosen without knowledge of the merger plan and without knowledge of the special benefits to the staff, never had and never will be given the opportu-

nity to vote meaningfully after a full disclosure on the question of the continuation of the Union's existence.

31. The Labor Department has indicated its belief that the Secretary of Labor has no authority to enforce the fiduciary obligations under § 501 of LMRDA; and, further, that the duly elected delegates to the Convention may vote on the proposed merger.

32. There is a high likelihood from what has been demonstrated at the hearing on the preliminary injunction that the plaintiffs will be able to prove, at a hearing on the merits, violations of the fiduciary obligations of trust and good faith dealing required by Title V of LMRDA.

33. No irreparable harm will befall the Union by a preliminary injunction forbidding the merger question from being taken up at the convention or effectuated. To the contrary, the Union membership, which is the Union, will benefit from an injunction whose purpose it is to insure that the membership has a democratic voice which it has not to date been given. Any expense of delaying the vote on the merger is offset by the expense of a new Convention if the merger is approved at the August 1971 Convention and subsequently declared invalid.

34. On the other hand, if the merger is not enjoined and it is permitted to go through, if when the case is reached on its merits the Court is required to set it aside and attempt to put the parties in the *status quo ante* and hold an election, it will be well nigh impossible because of changes in membership, the commingling of assets and increased dues structure to the membership while in the Steelworkers.

## CONCLUSIONS OF LAW

■ 1. This Court has jurisdiction of this case under Section 501 of the LMRDA, 29 U.S.C. § 501 (1964). Although that Section refers only to mismanagement of money or property, to deny jurisdiction in this case would lead to the anomalous result that the Union

members could be protected against misappropriation of limited amounts of cash but not against the wholesale misappropriation of the entire Union property. See Retail Clerks Union, Local 648, et al. v. Retail Clerks International Ass'n, et al., 299 F.Supp. 1012, 1022 (D.C.Cir. 1969). Also Bakery and Confectionery Workers International Union of America v. Ratner, 118 U.S.App.D.C. 269, 335 F. 2d 691 (1964).

■ 2. The delegates to the International Convention were duly elected and certified by the Secretary of Labor. No evidence having been introduced to question the Secretary's judgment, the delegates are qualified to vote on any matter *properly* before the convention.

■■ 3. The August 23–25 Convention is designated a Constitutional Convention. But the circumstances of its initiation and the importance of the issue of dissolution and merger require prior notice that merger will be considered, and adequate and timely dissemination of all the merger details to permit intelligent consideration and decision by the rank and file. These defects were not cured by the obviously inadequate consideration of the Resolution presented to the locals; and, in any event, such subsequent notice would be insufficient under the circumstance of this case.

■ 4. Additionally, with due respect for the judgment of the Labor Department, it is clear under the doctrine of Wirtz v. Local 153, Glass Blowers Ass'n, 389 U.S. 463, 88 S.Ct. 643, 19 L. Ed.2d 705 (1968) that no supervening incident should deprive the union members of an adequate opportunity to fairly elect those who are responsible for managing the assets of the Union; and further, that Mr. Moffett and his supporters should not be able to avoid the judgment of the rank and file by the device of a merger he himself negotiated. The rank and file of District 50 are caught in the middle of a power struggle and this Court should afford adequate protection for their interests.

5. The plaintiffs have demonstrated a substantial likelihood that they will succeed on the merits at trial.

6. The inconvenience that will result to the defendants does not outweigh the irreparable harm that plaintiffs will sustain unless the defendants are enjoined from proceeding with the merger.

7. An injunction is required to protect the continued existence of the assets and property of District 50, Allied and Technical Workers, and to prevent the officers and staff of that Union from profiting from their derelictions.

8. Since the injunction is for the benefit of the membership of the Union, on whose behalf this suit is brought, a minimum bond of $250 will be set, the cost of which shall be assessed against District 50, Allied and Technical Workers.