**UNITED BRICK & CLAY WORKERS OF AMERICA, AFL–CIO, Plaintiff,**

**v.**

**INTERNATIONAL UNION OF DISTRICT 50, ALLIED AND TECHNICAL WORKERS OF the UNITED STATES ιAND CANADA, Defendant.**

**No. 72 C 318(A).**

United States District Court,
E. D. Missouri, E. D.

June 21, 1972.

James K. Cook, Schuchat, Cook & Werner, St. Louis, Mo., for plaintiff.

Morris J. Levin, St. Louis, Mo., for defendant.

### MEMORANDUM OPINION

HARPER, District Judge.

Plaintiff, United Brick & Clay Workers of America, AFL–CIO, brought this action against defendant, International Union of District 50, Allied and Technical Workers of the United States and Canada, seeking preliminary injunction and permanent injunction specifically enforcing a "no-raid agreement" entered into between the parties. A hearing

was held before the Court and by agreement of the parties the hearing on the merits with respect to the permanent injunction was consolidated with the hearing originally scheduled on a preliminary injunction. The alleged no-raid agreement is contained in two letters plaintiff and defendant sent to each other (Exhibits 1–A, 1–B and 2). On May 26, 1971, defendant sent plaintiff a letter (Exhibit 1–A) and enclosed with that letter a copy of a communication (Exhibit 1–B) to the field staff of defendant. Plaintiff replied on June 9, 1971 (Exhibit 2). No provision was made in the letters to arbitrate disputes that might arise from the agreement. Defendant contends that the letters do not constitute a contract because both plaintiff and defendant were mistaken regarding a fact assumed by them as the basis on which they entered the agreement.

Plaintiff alleges jurisdiction under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, which provides in part:

"(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

Defendant seeks to dismiss plaintiff's complaint for the reason that this court is without jurisdiction to grant injunctive relief under the provisions of the Norris-LaGuardia Act, 29 U.S.C. § 101 et seq. Plaintiff neither disputes the fact that a literal reading of the Norris-LaGuardia Act would bring this dispute within the terms of the Act nor contends that plaintiff has satisfied the conditions the Act imposes before an injunction can be obtained. Plaintiff, instead, contends that the Supreme Court, in cases reconciling the ostensibly inconsistent provisions of the Norris-La-Guardia Act and § 301(a), has determined that district courts have the power to grant injunctive relief in cases of this nature. Plaintiff relies on Textile Workers Union v. Lincoln Mills, 353 U. S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), and Boys Markets, Inc. v. Retail Clerk's Union, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). Both of these dealt with collective bargaining agreements which contained mandatory grievance arbitration provisions. The Court in *Lincoln Mills*, supra, held that the Norris-LaGuardia Act does not withdraw jurisdiction to compel arbitration of grievance disputes. The Court in *Boys Markets*, supra, held that the Norris-LaGuardia Act does not preclude a federal district court from enjoining a strike in breach of a no-strike obligation when the collective-bargaining agreement contains a mandatory arbitration procedure. In both of these cases the Court determined that, even though the dispute might be within the terms of the Norris-LaGuardia Act, the Act did not bar the granting of injunctive relief. The Court based these decisions on the facts that, one, there was a congressional policy favoring the enforcement of the particular type of contract involved; and, two, the core purpose of the Norris-LaGuardia Act was not sacrificed by the limited use of equitable remedies to further this policy.

Although *Boys Markets*, supra, allowed an injunction to issue even when the dispute came directly under § 4 of the Norris-LaGuardia Act, the Court expressly limited its decision, stating, l. c. 253, 90 S.Ct. l. c. 1594:

"Our holding in the present case is a narrow one. We do not undermine the vitality of the Norris-LaGuardia Act. We deal only with the situation in which a collective-bargaining contract contains a mandatory grievance adjustment or arbitration procedure."

Several courts have dealt with the situation in which two labor organizations had a no-raid agreement, but all of these agreements contained an arbitration clause. United Textile Workers of

America v. Textile Workers Union, 258 F.2d 743 (7th Cir. 1958), and International Brotherhood of Firemen and Oilers v. International Association of Machinists, 338 F.2d 176 (5th Cir. 1964), both held that the arbitration clause of the no-raiding contract was enforcible by injunction. Both relied on the *Lincoln Mills* case. Local 2608, Lumber and Sawmill Workers v. Millmen's Local 1495, 169 F.Supp. 765 (N.D.Cal.1958) involved a raiding dispute between two members of the same brotherhood. The Court regarded a requirement of the union constitution that the president should decide "all points of law, appeals and grievances" as equivalent to the no-raiding agreement in *United Textile Workers*, supra. Because of the equivalence, the Court felt constrained to follow that decision and determined that it had jurisdiction.

Counsel for the opposing parties in this action have cited only one case in which a court has concluded that it had jurisdiction to issue an injunction in a labor dispute when the contract contained no arbitration provision or its equivalent. The Fourth Circuit in Parks v. International Brotherhood of Electrical Workers, 4 Cir., 314 F.2d 886, cert. denied 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963), reached this conclusion although it determined that the facts of the case did not warrant the issuance of an injunction. The Fourth Circuit recognized that the Supreme Court relied on the finding of a clear congressional policy favoring the enforcement of the type of contract involved in the *Lincoln Mills* case. The Fourth Circuit decided, however, even though a similar policy could not be found favoring federal court enforcement of the contract at issue, that since the matter in dispute was not part and parcel of the abuses against which the Norris-LaGuardia Act was directed, as indicated by the specific matters listed in § 4, the procedural requirements of the Act were not applicable. The present action is distinguishable from the *Parks* case in that the action which plaintiff is seeking to enjoin is specifically protected against injunction under § 4 of the Act. § 4 of the Norris-LaGuardia Act, 29 U.S.C. § 104, states in pertinent part:

> "No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts:
>
> "(a) * * *.
>
> "(b) Becoming or remaining a member of any labor organization * * *."

 Because the *Boys Markets* case affirmed the vitality of the Norris-LaGuardia Act when a contract does not involve a mandatory arbitration procedure, because no clear congressional policy has been pointed out which favors the enforcement of the type of contract involved in this case, and because the matter here involved was not found to be, as in the *Parks* case, manifestly not a part and parcel of the abuses against which the Act was aimed, this Court is without authority to issue a permanent injunction in this case.

Even if this Court had the power to issue an injunction in this case, an injunction would not be issued as the facts do not support such. The contract entered into by plaintiff and defendant was voidable by either party. The letter of May 26, 1971, stated that the merger of the members of District 50 into the United Steelworkers of America, AFL-CIO, had been approved by the international executive boards of both organizations and that a majority of the local unions of District 50 had approved the merger and authorized their delegates to vote in support of the merger. Plaintiff's attention was then directed to an attached communication which had been sent to defendant's field directors and representatives on April 27, 1971. The communication instructed them to with-

draw from any activity where a contractual involvement exists with any AFL–CIO union. This letter to plaintiff then stated:

"Inasmuch as the merger of our members into the United Steelworkers is complete, with the exception of the mere formality of acting upon a resolution on August 23, 1971, I would urge that similar consideration be extended to District 50 and its members by the several unions within the AFL–CIO who are continuing their activity against District 50 as operators currently under contract with our Organization."

The communication to defendant's field directors and representatives informed them that the merger had been approved by the international executive boards. The letter went on to state:

"The delegates to the Fourth Constitutional Convention will be approving the merger at the Convention commencing August 23, 1971, at the Sheraton-Park Hotel, Washington, D.C.

"During this interim period, your International Officers deem it important that you do not introduce any organizing activity at any plant or any establishment covered under contract with an AFL–CIO–CLC union."

Plaintiff's reply to defendant's letter states in pertinent part:

"We are glad to learn of the merger between your Union and the Steelworkers.

"Please be assured that our Union will see to it that any representatives of ours that may engage in any raiding activity will be discontinued immediately."

The delegates of the local unions were enjoined from approving the merger at the convention of August 23, 1971. Cefalo v. Moffett, 333 F.Supp. 1283 (D.D.C.), modified 146 U.S.App.D.C. 117, 449 F.2d 1193 (1971). A referendum vote on the merger was being taken at the time of the hearing of the present case. The ballots had not been opened or counted at the time of the hearing.

The substance of defendant's contention is that there was no binding agreement since the agreement was based on the assumption that the completion of the merger was a mere formality and would have occurred months ago. Plaintiff contends that there is a binding contract; that the length of the contract is the time during which the remaining steps for District 50 to be merged into the AFL–CIO are to be taken; and that these steps are still in the process of being taken, and, therefore, the contract is still in force.

Restatement of Contracts § 502 (1932) sets forth in pertinent part:

" * * * [W]here parties on entering into a transaction that affects their contractual relations are both under a mistake regarding a fact assumed by them as the basis on which they entered into the transaction, it is voidable by either party if enforcement of it would be materially more onerous to him than it would have been had the fact been as the parties believed it to be * * *."

■ It is evident that the basis on which the parties entered the agreement was the fact that District 50 would merge with the AFL–CIO–CLC on August 23, 1971. In all three letters the merger was viewed as already accomplished and all that was lacking was the vote at the convention on August 23rd by the delegates, a majority of whom represented local unions who had already endorsed and approved the merger action. The injunction prevented this imminent occurrence and denied the right of the delegates to approve the proposed merger, but instead required approval by the vote of the members of the union. The basis for the agreement was invalidated by court action. The burden of restraining from raiding when the merger is only a possibility which will occur, if it occurs at all, over a year later than originally assumed, is considerably more onerous than it would have been if the merger had actually depended upon the mere formality of a delegate

vote on August 23, 1971. Since both parties entered the agreement under the mistaken belief that the merger was to take place on August 23, 1971, the Court finds that the contract was voidable by either party. If the Court had jurisdiction, plaintiff would not be granted specific performance of the contract.

For the reasons set forth above, plaintiff's request for a permanent injunction is denied.

The Court adopts this memorandum as its findings of fact and conclusions of law and the clerk of the court is directed to prepare and enter the proper order dismissing the action and giving judgment to the defendant.