Keith THOMAS, et al., Plaintiffs,

v.

The GRAND LODGE OF INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, ("IAM"), et al., Defendants.

No. Civ. PJM 97–2001.

United States District Court,
D. Maryland,
Southern Division.

March 30, 1999.

Andrew Rotstein, Gibson, Dunn & Crutcher, New York City, C. Christopher Brown, Brown, Goldstein & Levy, Baltimore, MD, for plaintiffs.

Helene Victoria Hedian, Abato, Rubenstein & Abato, Baltimore, MD, Gary S. Witlen, Upper Marlboro, MD, for defendants.

## OPINION

MESSITTE, District Judge.

### I.

In this action brought under the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA" or "the Act"), 29 U.S.C. § 401 *et seq.* (1988), members of the International Association of Machinists (IAM) seek declaratory and injunctive relief with regard to the IAM's obligations under § 105 of the LMRDA, 29 U.S.C. § 415. The LMRDA guarantees labor union members certain rights, requires certain disclosures by unions and union officials and otherwise regulates union affairs. Section 105 provides that "every labor organization shall inform its members concerning the provisions" of the LMRDA. Plaintiffs contend that the statute requires the IAM to provide this information to its members on a continuing basis. Defendants' position is that the IAM's one-time provision of the information to its membership (as well as its continuing supplementation from time to time) satisfies the statute's requirements.

The matter is before the Court on the parties' Cross–Motions for Summary Judgment. The Court accepts Defendants' interpretation of the law and finds the IAM in compliance. Accordingly, it

will grant Defendants' Motion for Summary Judgment and deny that of Plaintiffs.

## II.

The parties agree that no genuine issue of material fact exists and that the matter should be resolved by summary judgment. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III.

Plaintiffs Keith Thomas, David Smith, and Kelly Vandegrift have been members of the IAM since 1985, 1979 and 1979 respectively. All are employed by Boeing Aircraft Corporation at its Wichita, Kansas facility. All have served in various official positions with the union's Local Lodge 834 in Wichita.

Defendant IAM is a labor organization within the meaning of § 3 of the LMRDA, 29 U.S.C. § 402(i). Headquartered in Upper Marlboro, Prince George's County, Maryland, it represents workers of various skills, trades and occupations in, among others, the aircraft, machinery, automotive, agricultural implement, defense and appliance industries. It has approximately 500,000 members in the United States and Canada organized in some 1,500 local lodges and 124 district lodges. The IAM negotiates approximately 6,000 contracts with 7,000 employers.

Defendant George J. Kourpias is the International President of the IAM, Defendant Donald E. Wharton its General Secretary–Treasurer.

## IV.

In 1959, in response to widely publicized hearings dealing with labor corruption, Congress enacted the LMRDA, also known as the Landrum–Griffin Act. *See Wirtz v. Local 153, Glass Bottle Blowers Ass'n,* 389 U.S. 463, 469–70, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968). And *see generally* Aaron, *The Labor–Management Reporting and Disclosure Act of 1959,* 73 Harv. L.Rev. 851 (1960). The Act establishes certain guarantees of union democracy and practices, literally a "Bill of Rights," including the right of union members to equal participation in union affairs, to free speech and association, to democratic procedures in raising union dues and other financial assessments, and the right to receive copies of collective bargaining agreements and financial reports, among numerous other entitlements. 29 U.S.C. § 411. Members are authorized to seek judicial relief for the enforcement of these rights. 29 U.S.C. §§ 2, 413.

When it became apparent that Landrum–Griffin would become law, the IAM undertook to comply with § 105 by publishing the entire text of the Act in *The Machinist,* its weekly publication of that era, sending the publication to all its members. Soon after, *The Machinist* carried an article discussing the newly promulgated financial disclosure, bonding and officer election provisions of the Act. In 1960, provisions concerning the rights of members to run for elective office and engage in campaign activities were published in the form of official circulars, printed in the newspaper, and sent to all members. In the same year, the IAM's Constitution was amended to comply with the Act and since that time has been periodically amended at IAM conventions to incorporate changes the union has deemed mandated by court decisions interpreting the Act. From time to time, official circulars clarifying union policy in light of developing law under the Act have also been distributed. According to the IAM, many of the Act's provisions are incorporated in materials utilized in its training courses and in particular comprise part of a publication entitled "We Are The IAM," an introductory booklet supplied to the IAM's new members.

Against this background, on July 24, 1996, Plaintiff Thomas sent a letter to Defendants Kourpias and Wharton stating his belief that the IAM was in violation of § 105 in that it had failed to inform its

members of the provisions of the LMRDA. In Thomas' view, because the IAM had not done so for so many years, a substantial majority of current IAM members had never received such information. Thomas further stated his opinion that the interests of the IAM and its members would be served if the union would inform its members of the provisions of the Act, particularly if it would do so for its new members on a continuing basis. For 11 months following the receipt of Thomas' letter, Defendants took no action to comply with this request, holding no hearing nor providing any other internal union remedy or procedure to address Thomas' concern.[1] This suit followed.

## V.

In addition to the Bill of Rights previously discussed, the LMDRA assures that union members shall have access to certain critical information. Among other things, a union must provide copies of collective bargaining agreement "to any employee who requests such a copy and whose rights as such employee are directly affected by such agreement." 29 U.S.C. § 414.

The union must also file with the Secretary of Labor a copy of its constitution and by-laws, together with a report pertaining to, among other things, the names of union officials, initiation fees, dues, and qualifications for membership. 29 U.S.C. § 431(a). Additionally, the union must file an annual financial report with the Secretary of Labor, 29 U.S.C. § 431(b). The Act requires that the union "shall make [this information] available . . . to all of its members." 29 U.S.C. § 431(c).

In similar vein, union officers and employees must file annual disclosure statements describing income received and transactions engaged in by the individuals, spouse, or child, 29 U.S.C. § 432, which must be made available as public information "on the request of any person," 29 U.S.C. § 435(b).

Enveloping these requirements is Section 105, codified as 29 U.S.C. § 415, which is at the heart of this case and which provides that "every labor organization shall inform its members concerning" all provisions of the Act. As indicated, the issue before the Court is whether the words "shall inform" mean that the union must do so continuously or whether one-time compliance and occasional updating will suffice. In other words, is every new member of the union required to be informed of the entire Act as he or she attains membership? Are existing members entitled to be continuously informed of changes in the law?

Plaintiffs argue that the LMRDA created a political order of union democracy, ethical practices and member enforcement and that continuous enforcement of § 105 is essential to effectuating these goals.

Defendants believe the IAM met its obligation under § 105 when it mailed a complete copy of the new statute to each of its members in 1959, and add for good measure that, since that time, the IAM has continued to provide its membership with appropriate information regarding their rights under the Act on a more or less regular basis.

## VI.

There is no fixed order of canons for interpreting statutes in federal practice. Courts are directed to look first at the plain meaning of the text, *see e.g. Chisom v. Roemer*, 501 U.S. 380, 405, 111 S.Ct. 2354, 115 L.Ed.2d 348 (1991) (Scalia, J. dissenting) ("We are to read the words of that text as any ordinary Member of Congress would have read them"), a point at which some judges would ordinarily prefer to stop. *See, e.g., United Steelworkers of America, AFL—CIO–CLC v. Weber*, 443 U.S. 193, 221, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979) (Burger, J. dissenting) (". . .

---

1. Accordingly, Thomas has exhausted any requirement that he might have had to pursue an internal union remedy before filing suit. *See* 29 U.S.C. § 411(a)(4).

without even a break in syntax, the Court rejects a 'literal construction of [the statute]' in favor of newly discovered 'legislative history' "). Other judges, no doubt a majority, proceed directly beyond the words of the statute to examine the legislative history of the provision, which invariably includes inquiry into the purposes of the legislation. *See, e.g., Milwaukee Brewery Workers' Pension Plan v. Jos. Schlitz Brewing Co.*, 513 U.S. 414, 115 S.Ct. 981, 130 L.Ed.2d 932 (1995) (Breyer, J.) (relying upon the language of the statute, its legislative history, and purpose).

Wherever one may come down on the interpretative spectrum, the plain meaning rule offers no guidance in the present case. It is no more evident from the words the union "shall inform its members concerning the provisions" of the Act that the action must occur continuously than it is that the informing need only take place on a single occasion.

## VII.

Legislative history provides no greater insight.

The parties concede that history is silent as to precisely what § 105 means. There are no reported cases which substantively interpret the provision.[2] There is no special mention of the provision in the Congressional committee reports,[3] and no Congressional discussion preceding enactment of the law provides illumination. Defendants point out that the § 105 of the final bill appears to have had its genesis as § 508 of the Kennedy–Ervin Bill (S.505), which was inserted as an accommodation to Senator Javits who had offered his own

bill during the 1958 Congressional session (II Leg. Hist. at 1105).

But there was no comparable provision in the bill sponsored by Senator McClellan, a prime architect of the legislation and one to whom substantial credit is given for the inclusion of the Bill of Rights provisions in the law. I Leg. Hist. at 260. In the House of Representatives, the current text of the law was included in bills sponsored by Congressmen Landrum (H.R.8400), Elliott (H.R.8342) and Shelley (H.R.8490). I Leg. Hist. at 633, 702, 881.

The House version of § 105 prevailed in Conference, but nothing in the House Conference Report sheds light on what the intent of the provision was. H.Rep. No. 1147, reprinted in I. Leg. Hist. at 934. The Senate Post–Conference analysis merely states that it "[r]equires every union to inform its members concerning the provisions of the bill." I. Leg. Hist. at 950.

Following final passage, two contemporary comments were published by counsel involved in drafting the Act, Michael J. Bernstein, Counsel to the Senate Labor Committee, and Arthur J. Goldberg, AFL—CIO special counsel and a member of the non-partisan blue ribbon committee employed by the Senate Labor Committee to act as a consultant. When asked in an interview whether the Act required unions to inform members of provisions of the new law, Bernstein responded affirmatively, stating that unions could comply by posting "a copy of the law on the union bulletin board." II Leg. Hist. at 1825. Goldberg wrote that unions "presumably" would "comply" by publishing "the text of the Act in a union's newspaper or any

2. The only reported decisions resulted in the dismissal of the claims based on plaintiffs' failure to exhaust available internal union remedies. *See Case v. IBEW, Local 1547*, 438 F.Supp. 856, 862 (D.Alaska 1977), *aff'd sub nom, Stelling v. International Brotherhood of Electrical Workers*, 587 F.2d 1379 (9th Cir. 1978), *cert. denied*, 442 U.S. 944, 99 S.Ct. 2890, 61 L.Ed.2d 315 (1979); *Broomer v. Schultz*, 239 F.Supp. 699 (E.D.Pa.1965), *aff'd*, 356 F.2d 984 (3d Cir.1966).

3. The National Labor Relations Board has compiled a legislative history of the LMDRA. *See generally* National Labor Relations Board, *Legislative History of the Labor Management Reporting and Disclosure Act of 1959, Volumes I and II*, GPO (1959) (hereinafter I or II Leg. Hist.); *see specifically* S.Rep. No. 187 reprinted in I Leg. Hist. at 397; H.Rep. No. 741 reprinted in I Leg. Hist. at 759.

other publication which is distributed or is reasonably available to all of the union's members." [4]

■ On the other hand, Plaintiffs cite the contemporaneous views of Department of Labor Officials given in response to inquiries from certain labor union attorneys and others shortly after the LMDRA's enactment. Although these officials disavowed any authority on the part of the Department of Labor to interpret or enforce the provision—a lack of authority which is clear and which the parties do not dispute—nonetheless in varying degrees some of the officials stated their belief that unions would be required to continuously inform new members about the Act and to keep old members who had previously been informed abreast of any changes Congress might make in the Act. Given the express withholding of interpretative or enforcement authority to the Department of Labor, however, the views of these officials carry no more weight than do those of any other contemporaneous observer. See Adams Fruit Co., Inc. v. Barrett, 494 U.S. 638, 649–50, 110 S.Ct. 1384, 108 L.Ed.2d 585 (1990). Recourse to contemporary commentary to give meaning to the provision, therefore, results at best in a draw.

### VIII.

Even "purposive interpretation" has its limitations.[5] Because the Act validates several purposes that compete with one another, it is difficult to discern which of these should be paramount.

The Court has no quarrel with the proposition offered by Plaintiffs that a well-informed union membership is essential for the kind of meaningful union democracy contemplated by the LMRDA. See e.g., Blanchard v. Johnson, 388 F.Supp. 208, 213–14 (N.D.Ohio 1974), aff'd in relevant

part, 532 F.2d 1074 (6th Cir.1976). Unquestionably to the extent a union fails to inform or misinforms its members when it has a duty to provide accurate information, there is a violation of the LMRDA. Id. at 213–14; Cefalo v. Moffett, 333 F.Supp. 1283, 1288 (D.D.C.1971).

At the same time, as Defendants point out, Congressional intent to foster the growth of democratic procedures and labor organizations was to be achieved within "a general philosophy of legislative restraint" to avoid unnecessary governmental intrusion into union affairs. S.Rep. No. 187 in I Leg. Hist. at 403. Congress recognized "the inadvisability and injustice of compelling unions to conform to a uniform statutory rule with respect to unimportant details of administration" and sought only to impose "minimum democratic safeguards and detailed essential information about the union." Id. As the U.S. Court of Appeals for the District of Columbia observed in Carothers v. Presser, 818 F.2d 926, 934 (D.C.Cir.1987) Title I of the LMDRA "is not a mandate for courts to impose on labor organizations whatever procedures or practices they regard as 'democratic.'"

The Court also finds persuasive the fact that courts have been disinclined to create judicial rights and remedies for labor unions which Congress has neglected to create. By way of illustration, Section 101(a)(2) of the Act, codified at 29 U.S.C. § 411(a)(2), provides that members of unions have the right to meet and assemble with other members, but says nothing about whether unions are required to conduct meetings. Although such a requirement might make good sense in view of the overall objectives of the Act, courts have in fact found that no such statutory requirement exists. See e.g. Grant v. Chicago Truck Drivers, Helpers and Warehouse Workers Union, 806 F.2d 114 (7th Cir.1986); Yanity v. Benware, 376 F.2d

---

4. Goldberg, "Analysis of Labor–Management Reporting and Disclosure Act of 1959," Industrial Union Department, AFL—CIO (1960), at pp. 10–11.

5. An early use of this term is found in Radin, Statutory Interpretation, 43 Harv.L.Rev. 863, 871 (1930).

197, 199 (2d Cir.1967). As the *Grant* court observed, by creating a right which fosters democracy, the court becomes responsible for defining the right and the manner in which unions can comply, duties better left to Congress. *Grant*, 806 F.2d at 118; *see also Local No. 82, Furniture and Piano Moving Furniture Store Drivers, Helpers, Warehousemen and Packers v. Crowley,* 467 U.S. 526, 547–50, 104 S.Ct. 2557, 81 L.Ed.2d 457 (1984).

It is also worth noting that Congress could easily enough have inserted the word "continuously" or the words "on a continuing basis" in § 105 to make clear the extent of a union's obligation to inform its membership of the provisions of the LMRDA. Again, § 104 provides that a labor organization shall "forward a copy of each collective bargaining agreement ... to any employee who requests such a copy." 29 U.S.C. § 414. Other provisions provide that information pertaining to the constitution and by-laws organization of the union or the financial transactions of officers and employees shall be made publicly "available." 29 U.S.C. §§ 431, 432, 435. The means of providing access to the information were specifically set out in these provisions, while the means for providing information under § 105 were left totally open to speculation.

There is, however, a pragmatic consideration that ultimately leads the Court to Defendants' position. The provision in question has lain dormant for some 39 years with virtually no effort to litigate its meaning having been undertaken by anyone anywhere. While it may be that many union members remain uninformed of the provisions of the LMDRA, it is also clear from the number of cases reported under the Act in general that the Act is in fact well known to many members of many unions. As Defendants have observed, it hardly seems the case that continuous provision of information about the Act by unions to their members was meant to be the linchpin of the Act's effectiveness.

Under the circumstances, the Court is unable to conclude that the statute requires a union—as its membership grows or as the text of the Act changes or is interpreted in court decisions—to maintain an unending stream of information to its membership.

If indeed it is reasonable to require a union to provide information about the Act to its members on a continuous basis, the remedy belongs to Congress, not the courts. Since it is undisputed that the IAM informed its members of the provisions of the Act at the time the Act became law, the union did as much as § 105 of the Act can fairly be said to require.

Defendants' Motion for Summary Judgment will therefore be GRANTED, that of Plaintiffs DENIED.

A separate Order will be entered implementing this decision.

### FINAL ORDER

Upon consideration of the parties' Cross–Motions for Summary Judgment, it is for the reasons stated in the accompanying Opinion this 30th day of March, 1999

ORDERED that the Motion of Plaintiffs for Summary Judgment is hereby DENIED; and it is further

ORDERED that the Motion of Defendants for Summary Judgment is hereby GRANTED; and it is further

ADJUDGED, ORDERED and DECREED that § 105 of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 415, does not require a labor organization to inform its membership of the provisions of the Act on a "continuous basis"; and it is further

ADJUDGED, ORDERED and DECREED that the International Association of Machinists is in compliance with § 105 of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 415; and it is further

ORDERED that Final Judgment is hereby ENTERED in favor of Defendants

International Association of Machinists, Kourpias, and Wharton and against Plaintiffs Thomas, Smith and Vandegrift; and it is further

ORDERED that the Clerk shall CLOSE this case.