**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

KEITH THOMAS; DAVID SMITH; KELLY
VANDEGRIFT,
Plaintiffs-Appellants,

v.

THE GRAND LODGE OF INTERNATIONAL
ASSOCIATION OF MACHINISTS AND
AEROSPACE WORKERS ("IAM"); R.
THOMAS BUFFENBARGER, in his

No. 99-1621

official capacity as International
President of the IAM; DONALD E.
WHARTON, in his capacity as
General Secretary-Treasurer of the
IAM,
Defendants-Appellees.

ASSOCIATION FOR UNION DEMOCRACY,
Amicus Curiae.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CA-97-2001-PJM)

Argued: December 1, 1999

Decided: January 27, 2000

Before WILKINSON, Chief Judge, NIEMEYER, Circuit Judge,
and Samuel G. WILSON, Chief United States District Judge
for the Western District of Virginia, sitting by designation.

_____

Reversed and remanded by published opinion. Chief Judge Wilkinson wrote the opinion, in which Judge Niemeyer and Chief Judge Wilson joined.

_____

**COUNSEL**

**ARGUED:** Andrew David Rotstein, GIBSON, DUNN & CRUT-CHER, L.L.P., New York, New York, for Appellants. David Laurence Neigus, INTERNATIONAL ASSOCIATION OF MACHINISTS, Upper Marlboro, Maryland, for Appellees. **ON BRIEF:** Michael J. Goldberg, WIDENER UNIVERSITY SCHOOL OF LAW, Wilmington, Delaware; Barbara Harvey, Detroit, Michigan, for Amicus Curiae.

_____

**OPINION**

WILKINSON, Chief Judge:

This case involves the notification obligations of labor unions under section 105 of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA). 29 U.S.C. § 415 (1994). Section 105 states in its entirety: "Every labor organization shall inform its members concerning the provisions of this chapter." The district court found that the defendant union satisfied section 105's mandate by virtue of a single publication of the LMRDA to its members in 1959, the year of the LMRDA's enactment. See Thomas v. Grand Lodge of Int'l Ass'n of Machinists, 40 F. Supp. 2d 737, 743 (D. Md. 1999). Because we believe that section 105 requires that the present members of a union be informed of their rights under the statute, we reverse and remand to the district court for further proceedings.

I.

Congress enacted the LMRDA in 1959 to protect "the rights and interests" of union members against abuses by unions and their officials. These abuses include "breach of trust, corruption, disregard of the rights of individual employees, and other failures to observe high

2

standards of responsibility and ethical conduct." <u>See</u> 29 U.S.C. § 401(b) (1994). In addition to granting various substantive rights to union members, the LMRDA requires that each labor union "inform its members concerning the provisions of" the Act. <u>Id.</u> § 415.

The International Association of Machinists and Aerospace Workers (IAM) is a labor organization that represents workers of various skills and trades in, <u>inter alia</u>, the aircraft, machinery, automotive, agricultural implement, defense, and appliance industries. Presently, the IAM represents some 500,000 workers and is organized into approximately 1,500 local lodges. When passage of the LMRDA was imminent in 1959, the IAM, in an attempt to comply with section 105, published the entire text of the Act in its weekly newspaper, <u>The Machinist</u>. <u>The Machinist</u> was mailed to all IAM members.

The plaintiffs in this case, Keith Thomas, David Smith, and Kelly VandeGrift, are employed by the Boeing Aircraft Corporation at its Wichita, Kansas facility. All three plaintiffs have long been active members of IAM Local Lodge 834. They have served as officials in the local lodge, have participated in the Unionists for Democratic Change caucus, and Thomas has published newsletters on union affairs. Plaintiffs assert that the IAM is not in compliance with section 105. They contend that under section 105 the IAM cannot simply rely on its one-time notification to the membership in 1959. Rather, the IAM must make continuing efforts to inform its members of the LMRDA's provisions. Plaintiffs also argue that the IAM's failure to inform its current membership of the LMRDA's provisions has compromised plaintiffs' ability and that of others to participate effectively in union affairs.

Thomas sent a letter to the IAM leadership requesting the union to take appropriate action to comply with section 105. After eleven months of union inaction, plaintiffs brought suit in federal district court against the IAM and its top two elected officials seeking declaratory and injunctive relief with regard to the IAM's obligations under section 105. The parties filed cross-motions for summary judgment. The district court granted the IAM's motion and dismissed the plaintiffs' case. <u>See Thomas</u>, 40 F. Supp. 2d at 743-44. The court found the IAM to be in compliance with section 105 by virtue of its one-

3

time publication of the LMRDA to its membership at the time the Act became law. See id. at 743. Plaintiffs now appeal.

II.

The IAM argues that its one-time publication of the LMRDA to its membership in 1959 satisfies its section 105 duty. We disagree.

The union's view of section 105 runs counter to the clear text of the provision. Section 105 states: "Every labor organization shall inform its members concerning the provisions of this chapter." 29 U.S.C. § 415 (emphasis added). We must thus ask whether the IAM informed "its members" of the provisions of the LMRDA solely by virtue of its 1959 notification. "Member," as defined in the LMRDA, "includes any person who has fulfilled the requirements for membership in [the union], and who neither has voluntarily withdrawn from membership nor has been expelled or suspended from membership after appropriate proceedings consistent with lawful provisions of the constitution and bylaws of such organization." Id. § 402(o). There is nothing in this definition to differentiate a 1959 member of the IAM from a 1999 member. In fact, "member" as used in the LMRDA is an all-inclusive and all-embracing term that includes no temporal limitations. So long as an individual meets the statutory definition, he is a union member for purposes of the LMRDA generally and for section 105 specifically.

Given the statutory definition of "member," the continuous nature of the notification duty is evident. Union membership is not static -- the membership changes as some individuals retire and others join. Many, if not most, of the current members of the IAM were not members in 1959 and thus have never been informed by the IAM of the provisions of the LMRDA. The IAM's single act of notification in 1959 did not inform a large portion of those individuals who by definition are "members" of the union. It is therefore clear that the IAM is out of compliance with the mandate of section 105.

Requiring that all members of the union, past and present, be informed of their rights promotes the LMRDA's purpose. Congress's "primary objective" in passing the LMRDA was to "ensur[e] that unions would be democratically governed and responsive to the will

4

of their memberships." <u>Finnegan v. Leu</u>, 456 U.S. 431, 436 (1982). Title I of the Act, in addition to providing the section 105 notification right, contains provisions guaranteeing union members such important democratic rights as equal participation in union affairs, <u>see</u> 29 U.S.C. § 411(a)(1) (1994), freedom of speech and assembly, <u>see id.</u> § 411(a)(2), majority vote by secret ballot for most dues increases, <u>see id.</u> § 411(a)(3), due process in union disciplinary proceedings, <u>see id.</u> § 411(a)(5), and access to copies of collective bargaining agreements, <u>see id.</u> § 414. These rights were considered so crucial to the democratic governance of unions that Title I was captioned the "Bill of Rights of Members of Labor Organizations." <u>Id.</u> §§ 411-415; <u>see also</u> 105 Cong. Rec. S6472 (daily ed. April 22, 1959) (statement of Sen. McClellan) (Title I places "the ultimate power in the hands of the members, where it rightfully belongs, so that they may be ruled by their free consent.").

The other titles of the LMRDA also contain provisions that enhance union democracy. Title II requires extensive reports by unions of their organization and financing, <u>see</u> 29 U.S.C. § 431 (1994), and the disclosure of union officers' potential conflicts of interest, <u>see id.</u> § 432. Title III requires that a trusteeship set up by a union over a subordinate body be for purposes of, <u>inter alia</u>, "correcting corruption or financial malpractice [or] restoring democratic procedures." <u>Id.</u> § 462. Title IV sets forth procedures and mechanisms to ensure that union elections will be run fairly and democratically, <u>see id.</u> § 481, and gives a member the right to request the Secretary of Labor to investigate violations of the title's requirements, <u>see id.</u> § 482. Title V of the Act imposes a fiduciary duty on union officials to their union and its members, <u>see id.</u>§ 501(a), and restricts the amount of money a union can loan an officer or employee, <u>see id.</u> § 503(a). Finally, Title VI bars reprisals against union members for exercising their LMRDA rights. <u>See id.</u> § 529. This title goes so far as to establish criminal penalties for using or threatening force or violence against any union member for exercising a right secured by the LMRDA. <u>See id.</u> § 530.

The LMRDA's protections are meaningless, however, if members do not know of their existence. Simply put, if a member does not know of his rights, he cannot exercise them. This is where section 105 kicks in. Section 105 is the statute's informational lynchpin, requiring

5

labor organizations to inform members what rights Congress has granted them. Moreover, section 105 mandates notification not only of the provisions of Title I, but of all the rights found in the LMRDA.

Section 105, in addition to informing union members of their substantive rights under the LMRDA, also notifies them of provisions authorizing causes of action against unions for infringements of these substantive rights. See, e.g., id.§ 412 (actions to enforce Title I rights); id. § 431(c) (actions to permit members to examine union books, records, and accounts); id. §464 (actions to enforce certain union Title III trusteeship requirements); id. § 501(b) (actions to enforce Title V's fiduciary duties on union officers); id. § 529 (actions for relief from union retaliation for a member's exercise of his LMRDA rights). Senator McClellan, a principal architect of the LMRDA, noted: "I believe that if you would give to the individual members of the unions the tools with which to do it, they would pretty well clean house themselves." 105 Cong. Rec. S6476 (daily ed. April 22, 1959). But in order for union members to be able to do that job, they must first be made aware of the Act's enforceability provisions.

Ensuring that members know of these judicial remedies is important given that the Secretary of Labor's enforcement power is limited with respect to some of LMRDA's protections. In fact, the Secretary of Labor is explicitly precluded from investigating violations of the rights contained in Title I of the Act -- the"Bill of Rights of Members of Labor Organizations." See id.§ 521. Union members are thus not only the beneficiaries of the LMRDA but in many instances its sole guardians.

Against this backdrop, the IAM's insistence that section 105 is satisfied by a single decades-old notification makes little sense. The union argues in effect that Congress was only interested in informing 1959 union members of their LMRDA rights, but was perfectly willing to let ignorance reign for the next forty years. There is no reason to think that Congress, however, was not concerned about all union members -- past, present, and future. Maintaining honest democratic governance of unions is surely an ongoing effort that would seem perforce to require some ongoing method of notification.

The difficulty with the IAM's interpretation is underscored by the inconsistencies to which it gives rise. Suppose two section 105 suits

6

are brought -- the first by an IAM member and the second by a member of Union X, which has never undertaken any notification act. Presumably under IAM's reasoning, the IAM would be found in compliance while Union X would be subject to injunction. This despite the fact that few, if any, members of either union would ever have been notified of LMRDA's protections.

III.

The IAM further argues that affording plaintiffs the relief they seek would cause this court to create rights and remedies that Congress never authorized. We are unpersuaded. This is not a case like Yanity v. Benware, 376 F.2d 197 (2d Cir. 1967), and Grant v. Chicago Truck Drivers, 806 F.2d 114 (7th Cir. 1986). Both of those courts refused to find that unions were statutorily required to hold membership meetings based on such tangential provisions as the equal right to participate and vote at union meetings, see 29 U.S.C. § 411(a)(1) (1994), and "the right to meet and assemble freely with other members," id. § 411(a)(2). The plaintiffs in this case are not asking this court to construct a right out of the penumbras of related provisions. Rather, they are asking the court to perform the most traditional of judicial functions -- to give effect to the plain language of section 105.

Secondly, section 102 of the LMRDA explicitly provides a remedy for the violation of section 105: Any person whose rights under Title I have been infringed "may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate." 29 U.S.C. § 412 (1994). The Supreme Court has emphasized the breadth of this language: Section 102"was premised upon the fact that Title I litigation necessarily demands that remedies be tailored to fit facts and circumstances admitting of almost infinite variety, and § 102 was therefore cast as a broad mandate to the courts to fashion appropriate relief." Hall v. Cole , 412 U.S. 1, 10-11 (1973) (internal quotation marks omitted).

Granting plaintiffs the relief to which they are statutorily entitled need not involve the courts in internal union management. Section 105 does not dictate a specific method of compliance. All the LMRDA directs is that the IAM afford notice of the LMRDA's provisions to any individual who meets the statutory definition of "mem-

7

ber." Effective notice thus requires at a minimum that each individual, soon after obtaining membership, be informed about the provisions of the LMRDA.

The district court retains on remand discretion with respect to implementation of the notice requirement. We do note, however, that the IAM's post-1959 inclusion of some LMRDA protections in its constitution and in a pamphlet entitled "We Are the IAM" do not satisfy the minimum statutory requirement. First, it is undisputed that these IAM materials do not contain all of the LMRDA's protections. Second, virtually none of the rights listed by these documents are presented as requirements of federal law. This not only lessens the stature given to the substantive protections, but it also means that union members are not informed that many of the protections listed are enforceable in federal court. Third, it is at best unclear how widely circulated either the IAM's constitution or the"We Are the IAM" pamphlet are. As a result, something more will be required before defendant may be said to satisfy section 105.

IV.

For the foregoing reasons, we reverse the judgment of the district court and remand this case for further proceedings consistent with this opinion.

REVERSED AND REMANDED