Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 7, 2003      Decided December 2, 2003

No. 02-7111

CHARLES CALLIHAN AND
WILBER M. THOMAS,
APPELLANTS

v.

UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES
OF THE PLUMBING AND PIPEFITTING INDUSTRY AND
MARTIN J. MADDALONI, UA GENERAL PRESIDENT,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(00cv02988)

*Arthur L. Fox, II* argued the cause and filed the briefs for appellants.

*Sally M. Tedrow* argued the cause for appellees. With her on the brief was *Dinah S. Leventhal.*

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: SENTELLE, RANDOLPH, and ROGERS, *Circuit Judges.*

Opinion for the Court filed by *Circuit Judge* RANDOLPH.

RANDOLPH, *Circuit Judge*: After the decision in *Thomas v. Grand Lodge of Int'l Ass'n of Machinists & Aerospace Workers ("IAM")*, 201 F.3d 517 (4th Cir. 2000), two union members brought an action against their union, claiming that it had not complied with § 105 of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 415. Section 105 reads: "Every labor organization shall inform its members concerning the provisions of this chapter." The "provisions" set forth the rights of union members and the responsibilities of union officers. *Thomas* held that unions had an ongoing duty to inform their members of the LMRDA. The complaint in this case alleged that the union had provided its members with information about the LMRDA only once, when the provisions became law in 1959. While the complaint was pending, the union undertook several steps to notify its members of the LMRDA. To the district court, these steps satisfied § 105. The court therefore entered summary judgment for the union, from which the members appeal.

No one disputes the holding in *Thomas* that "members" in § 105 means current union members. The issue here is the meaning of "inform," an issue the court of appeals in *Thomas* directed District Judge Messitte to resolve on remand. 201 F.3d at 521. When the case returned, Judge Messitte ordered the union to send all new members a copy of the Department of Labor's summary of the LMRDA; to publish the summary in three issues of the union's journal, the first within six months of the order, and again in 2004 and 2008; and to post the summary on the union's website. *Thomas v. Grand Lodge of Int'l Ass'n of Machinists & Aerospace Workers*, Civ. No. PJM 97–2001 (D. Md. Sept. 19, 2000).

The Labor Department's one-page summary of the LMRDA describes the union member rights contained in Title I. Among these are the right to participate equally in union activities, freedom of speech, and safeguards against improper discipline. *See* 29 U.S.C. § 411. The summary also mentions other LMRDA provisions, some imposing duties on

union officers and others giving members the right to receive copies of collective bargaining agreements and union reports to the Labor Department; to run for office; to cast secret ballots in union elections; and to protest the conduct of elections. At the end of the Labor Department's summary is a statement that the full text of the LMRDA may be found in many public libraries and on the Internet at the Department's website — www.dol.gov.

After the complaint was filed in this case, the union — apparently taking a cue from the district court's order in *Thomas* — published a copy of the Labor Department's summary in its journal, agreed to do the same in 2004 and 2008, and modified its welcome letter to new members to include the summary. The union did not, however, post the summary on its website. These are the union actions the district court viewed as sufficient compliance with § 105.

We place to one side the point that the union's actions, even if sufficient, did not preclude the district court from issuing an injunction requiring the union to do what it now promised. "Voluntary discontinuance of an alleged illegal activity does not operate to remove the case from the ambit of judicial power." *Walling v. Helmerich & Payne*, 323 U.S. 37, 43 (1944). *See United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953); *Hecht Co. v. Bowles*, 321 U.S. 321, 327 (1944). But in the district court and in this court, the members never invoked this line of authority as a ground for opposing the union's summary judgment motion or as a basis for claiming that they were entitled to summary judgment.

As the case was presented, the union's liability therefore depended not on whether it had violated § 105 in the past, but on whether the measures it had undertaken constituted present compliance. The argument is that although sending the LMRDA summary to new members may suffice to inform them of the provisions, the union's publication of the summary in its journal did not adequately inform current members. In their brief, the members rely on several affidavits from experts on labor unions. One expert stated that members do not read union journals because these publications

are "generally uninteresting." Another stated that union publications "range in quality dramatically" and that there "is no accurate sense as to how widely these are read." Still another expert stated that there "is no definitive way for me to determine what percentage of union members read their union's publications," but it was "my impression that a substantial number — perhaps the majority — don't read them at all."

The expert affidavits spoke of unions generally, or, in one instance, of the Teamsters in particular; none of the affidavits dealt specifically with the union in this case — the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry; and none had anything to say about the quality of its journal or the extent of its readership. Perhaps for this reason, the members, in their statement of material facts not in dispute, did not refer to the affidavits and said nothing about the readership of the union's journal. And in their opposition to the union's statement of material facts not in dispute, the members did not file a separate statement of material facts in dispute, as local Rule 7.1(h) requires. *See Gardels v. CIA*, 637 F.2d 770 (D.C. Cir. 1980). Instead, they filed a memorandum in opposition indicating that they had offered the affidavits not to contest facts, but only to guide the court in its exercise of remedial discretion.

The summary judgment papers raised no other genuine issue of fact. At best, the members' position focused not so much on what the union was doing but on what more it could have done to inform the members. That is also the gist of their argument on appeal. The members offered two proposals, neither of which the district court adopted. The first was that the court order the union to post the LMRDA summary on its website. There is nothing to this, whether viewed as a proposed remedy or as a basis for liability. The members offered no evidence that the union's website has widespread readership. In fact, one of the members' experts stated in his affidavit that "most union members do not own computers or they lack the surfing skills to find the union's web page." Another expert stated that although "substantial numbers of union members have computers," they will not go to a union's

"website for information." If the idea is that union members should have some way to gain access to the full text of the LMRDA, as another of the experts proposed, this may be accomplished by following the summary's direction to the Department of Labor's website, or by a simple Internet search for "LMRDA text."

The members' other proposal was that the court order the union to append the Labor Department's summary to the union's constitution because members often turn to the constitution during disputes with the union leadership. Some of the affidavits support this proposition in general. (The parties tell us that members receive a copy of the constitution only upon request.) But we can perceive no legal principle derived from § 105 that necessarily requires this measure as a remedy for a violation. Still less can we see any basis for interpreting "inform" in § 105 to mean that unions who do not attach the summary to their constitutions violate the LMRDA. That this form of notice might result in more members being informed surely cannot be the legal standard. Sending a copy of the summary to members each month, or each week, or even each day might also better inform them of their rights under the LMRDA, but no one would seriously contend that a union's failure to do so violates § 105. In passing this statute, Congress "believed that only essential standards should be imposed by legislation, and that in establishing those standards, great care should be taken not to undermine union self-government." *United Steelworkers of Am. v. Sadlowski*, 457 U.S. 102, 117 (1982). *See also Carothers v. Presser*, 818 F.2d 926, 933–34 (D.C. Cir. 1987). We therefore refuse to transform § 105 into a detailed code of union conduct. Unions may choose among measures that meet the minimum criterion of actual notice. So long as the union makes a good-faith attempt to reach its current members through means that enable the members to learn of the LMRDA's provisions, § 105 is satisfied, even if more could have been done. *Cf. Nielsen v. Int'l Ass'n of Machinists & Aerospace Workers*, 94 F.3d 1107, 1115 (7th Cir. 1996).

The members, citing *Int'l Org. of Masters, Mates & Pilots v. Brown*, 498 U.S. 466 (1991), tell us that union autonomy is

of no concern when enforcing § 105. The case is not on point. The Supreme Court there was addressing a very different provision in a different title of the LMRDA. In *Carothers*, we ruled that courts enforcing Title I should not interfere with union procedures unless the union violates a specific statutory proscription. *Carothers*, 818 F.2d at 933–34. That is the controlling precedent here.

*Affirmed.*