

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-14-2006

# Knight v. Intl Longshoremen

Precedential or Non-Precedential: Precedential

Docket No. 05-3430

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Knight v. Intl Longshoremen" (2006). *2006 Decisions*. Paper 525.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/525

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-3430

———

EDDIE KNIGHT; CHARLES S. MILLER-BEY;
EDDIE MCBRIDE; LEONARD RILEY, JR.,
                                        Appellants

v.

INTERNATIONAL LONGSHOREMEN'S ASSOCIATION

———

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 01-cv-00005)
District Judge: Honorable Joseph J. Farnan, Jr.

———

Argued April 21, 2006

Before: SLOVITER, AMBRO, Circuit Judges, and
DuBOIS[*], District Judge

(Filed: August 14, 2006)

———

Michael J. Goldberg   (Argued)
Cherry Hill, NJ  08003

Perry F. Goldlust
Wilmington, DE 19899

      Attorneys for Appellants

———

[*] Hon. Jan E. DuBois, Senior Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

Stephen B. Potter
Potter, Carmine Leonard & Aaronson
Wilmington, DE 19899

Ernest L. Mathews, Jr.   (Argued)
Gleason & Mathews
New York, NY 10004

      Attorneys for Appellee


OPINION OF THE COURT

———


SLOVITER, Circuit Judge.

      Congress enacted the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA") following a two-year investigation into allegations of union wrongdoing by the Senate Select Committee on Improper Activities in the Labor Management Field.  In introducing the LMRDA, Senator McClellan, Chairman of the Senate Select Committee, stated that the bill was "designed to provide effective remedies for some of the perversions of decent unionism and flagrant exploitations and abuses that have been exposed by more than 1,200 witnesses who have appeared and testified . . . ." 105 Cong. Rec. 6461, 6469 (1959).

      Recognizing that if Congress "would give to the individual members of the unions the tools with which to do it, they would pretty well clean house themselves," id. at 6476, the LMRDA included a "Bill of Rights of Members of Labor Organizations," 29 U.S.C. § 411, whose guarantees include freedom of speech and assembly, the equal rights of all members to vote in union elections, and freedom from improper disciplinary action.   These provisions were enacted at least in part, "to protect rank-and-file members of the union and to insure union democracy by protecting the independence of elected union officials . . . ." Ross v. Hotel Employees & Rest. Employees Int'l Union, 266 F.3d 236, 252 (3d Cir. 2001).

2

There is ample reference in the record in this case that Appellee, the International Longshoremen's Association ("ILA"), was one of the unions rife with abuse targeted by the LMRDA. A group called the Workers' Coalition was formed to address issues of concern within the ILA. As set forth in the Amended Pretrial Order:

> The Workers['] Coalition is a caucus of ILA members and local officers whose stated mission is to "address issues of concern within the [ILA] whereby a forum can be created to foster and develop positive and new ideas, to improve and enhance the constitution, bylaws, and legislative procedures to educate every rank and file member; to create an environment whereby all concerns may be addressed and identified in a harmonious manner . . . ." The Workers['] Coalition has members in ILA locals in various Atlantic and Gulf Coast ports, including Wilmington, Delaware; Savannah, Georgia; Charleston, South Carolina; and New Orleans, Louisiana. The Coalition is not an official organ of the ILA and is not approved by the International.

JA at 74.

## I.

The four plaintiffs in this case are ILA union members and members of the Workers' Coalition who sued the ILA for numerous violations of the LMRDA. Eddie Knight and Charles Miller-Bey (referred to at times in the record as "Miller") are both active members of ILA Local 1694. Knight was financial secretary of the union before the events at issue here. Eddie McBride, a member of ILA Local 1414 in Savannah, Georgia, is one of the national co-chairs of the Workers' Coalition. Leonard Riley, Jr., is a member of ILA Local 1422 in Charleston, South Carolina.

In early 2000, Knight made a motion at a meeting of Local 1694 to host a Workers' Coalition meeting and to have the Local contribute $1500 toward that purpose. The motion was carried. Knight distributed promotional materials for the

3

meeting, which stated that members of the ILA were hosting a meeting of the Workers' Coalition. The promotional material came to the attention of Adam McBride, the Executive Director of the Diamond State Port Corporation, an employer of ILA members. Adam McBride (who is no relation to plaintiff Eddie McBride and to whom we refer by his full name to avoid confusion) had his employer give an unsolicited $500 contribution to Knight to help fund the meeting. The check was made payable to the hotel at which the meeting was to be held and was for the continental breakfasts. Adam McBride also agreed to speak at the meeting.

After being contacted by ILA Vice-President James Paylor, who told him the Workers' Coalition was not affiliated with the ILA,[1] Adam McBride decided not to speak at the ILA meeting, though he did not withdraw his financial support. Knight and Miller-Bey blamed Paylor for McBride's decision not to speak and, believing that Paylor had told McBride that the Coalition was being investigated for communist affiliation, brought intra-union charges accusing Paylor of interfering with the Local's autonomy and causing harm and division to the ILA.

In response, Paylor filed counter-charges against Miller-Bey and Knight, accusing them of filing frivolous charges that were detrimental to the welfare of the ILA in violation of Article XVIII of the ILA Constitution, and unauthorized use of the ILA name and logo in violation of Article XXVII of the ILA Constitution.

All of the charges and counter-charges were heard in August 2000 by a Committee convened pursuant to the ILA Constitution. Before the hearings plaintiffs requested specification of the charges against them, but that request was denied. In September, the Committee exonerated Paylor and Miller-Bey and recommended that the Executive Council of the union suspend Knight from his local office and fine him $500, the amount of the contribution made by the Diamond State Port

---

[1] In fact, the ILA's public position is that it disapproves of the Workers' Coalition.

Corporation, and that he be directed to repay that amount. In October, this recommendation was adopted by the ILA's Executive Council.

The Committee found that Adam McBride had been misled by Knight into believing that the Workers' Coalition was endorsed by the ILA. The Committee also found that Knight's acceptance of Adam McBride's donation violated § 302 of the Labor-Management Relations Act, which proscribes gifts from employers to employees who are union representatives. See 29 U.S.C. § 186. The Committee Report "notes that . . . the Worker's Coalition had no right to use the ILA logo or the Local 1964 in connection with the solicitation of funds to an employer of ILA labor in the port." JA at 394.

Several months after Knight was disciplined, plaintiffs initiated this lawsuit, claiming that the ILA violated various provisions of the LMRDA. In their complaint for injunctive relief and damages, plaintiffs asserted four claims: (1) that the ILA violated their rights to procedural safeguards in an internal disciplinary proceeding protected by §§ 101(a)(5) and 609 of the LMRDA, 29 U.S.C. § 411(a)(5),[2] by denying Knight and Miller-Bey sufficient notice and a reasonable time to prepare their defenses, refusing Knight permission to record the proceedings of the disciplinary hearing, forcing Knight to appear before a biased hearing committee, and finding that he had committed offenses of which there was no evidence; (2) that the ILA violated their right to free speech by retaliating against them for exercising that right as union members pursuant to §§ 101(a)(2) and 609 of the the LMRDA, 29 U.S.C. §§ 411(a)(2),[3] and 529,[4]

---

[2] Section 411(a)(5) provides: "No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing."

[3] Section 411(a)(2) provides: "Every member of any labor organization shall have the right to meet and assemble freely with

when it brought charges against Knight and Miller Bey and fined Knight;  (3) for interfering with their free speech rights through Article XXVII and XXVIII (conduct detrimental to the ILA) of the ILA Constitution; and (4) the ILA violated § 105 of the LMRDA, 29 U.S.C. § 415, by failing to adequately inform ILA members of the provisions of the LMRDA.  The defendants raised various counter-claims which they later withdrew.

The District Court granted summary judgment for the ILA on all claims except the claim that the ILA had violated the LMRDA's due process provision, § 411(a)(5),  by failing to give Knight time to develop a response to the charges, and whether the ILA fined Knight in violation of § 529 for exercising his right to speak freely.  With regard to the other claims, the District Court found that Miller did not have standing to raise a due process claim against the ILA because he was not punished, and the ILA had not violated § 105 of the LMRDA.  The District Court abstained from deciding whether Article XXVII of the ILA Constitution violated the LMRDA free speech provisions.[5]

---

other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided*, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations."

[4]Section § 529 provides: "It shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this chapter."

[5]The District Court granted summary judgment for the ILA on Knight's claim that the union had disciplined him in order to

After a bench trial on the remaining claims, the District Court concluded that the ILA had given Knight and Miller-Bey time to respond to the charges and that the ILA had not fined Knight in violation of § 529, but rather because he improperly accepted funds from an employer, in violation of the ILA Constitution and § 302 of the Labor-Management Relations Act. Plaintiffs now appeal.[6]

On appeal, plaintiffs contend that: (1) the District Court erred in abstaining from ruling on their claim that Article XXVII of the ILA Constitution is overbroad and thus violates their free speech rights; (2) the District Court erred in holding that the ILA had not violated the LMRDA's due process requirement by compelling Knight to appear before a biased hearing committee and by denying his request to tape-record the hearing; and (3) the District Court erred in finding that the ILA was in compliance with § 105 of the LMRDA, which requires that union members be made aware of the provisions of the LMRDA. We consider each of these claims in turn.

## II.

A.  Free Speech Claim

This court has held that § 101(a)(2) of the LMRDA gives unions the right to provide reasonable rules in three situations: "(1) for conducting union meetings; (2) for insuring individual responsibility to the union as an institution; and (3) for preventing any interference with the union's performance of its legal or contractual obligations." Semancik v. United Mine Workers Union of Am. District #5, 466 F.2d 144, 153 (3d Cir. 1972).  The union's ability to adopt reasonable rules is limited by 29 U.S.C. § 411(b), which provides that "[a]ny provision of

---

silence his speech in violation of § 411(a)(2) and then, due to a clerical error, addressed this claim again after the bench trial.

[6]The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 412.  This court has jurisdiction pursuant to 28 U.S.C. § 1291.

the constitution and bylaws of any labor organization which is inconsistent with the provisions of this section shall be of no force or effect."

Article XXVII of the ILA Constitution, the article at issue here, provides:

> **Section 1.** No individual member, local union, district council or any other affiliated group or individual may use the name "International Longshoreman's Association", or its abbreviation, "I.L.A.,", its emblem or trademark, for any advertising purposes whatsoever, without the written authority to do so from the International Executive officers.
>
> **Section 2.** The Executive Council or the International Executive officers may grant to any local of district council . . . the authority to use the name "International Longshoremen's Association" or it abbreviation, "I.L.A.", its emblem or trademark, whenever such use is to be solely in connection with advertising and printing of programs for balls, or other social or civic affairs for the benefit of such local or district council, and only in the event that the funds derived in connection with the use of such name or emblem or trademark shall revert in full to the benefit of the local or district council to whom such privilege was granted.
>
> **Section 3.** No member or group of members may use the name "International Longshoremen's Association", or its abbreviation, "I.L.A.," its emblem or trademark or a name, abbreviation, emblem or trademark calculated to simulate the name, abbreviation, emblem or trademark of the ILA in connection with any printing, publication or otherwise, unless authorized in writing by the International Executive officers.

JA at 112-13.

The District Court abstained from considering plaintiffs' claim that this provision violates the free speech rights of union

8

members protected under § 101(a)(2) of the LMRDA. The Court, after referring generally to abstention under the <u>Pullman</u> doctrine,[7] gave as its basis for abstaining that "in the instant case, only one allegedly violative use of the ILA constitution is asserted. Further, it is unclear from the facts whether protected speech-related activity was punished and whether the Defendant's use of the provisions of its constitution is too broad." JA at 27. Thus, the District Court "conclude[d] there is insufficient evidence to warrant the Court's involvement in examining the general adequacy of the union's constitutional provisions . . . ." JA at 27.

We have stated that "'[a] district court has little or no discretion to abstain in a case that does not meet traditional abstention requirements . . . . *Within these constraints,* determination whether the exceptional circumstances required for abstention exist is left to the district court, and will be set aside on review only if the district court has abused its discretion.'" <u>Univ. of Md. at Balt. v. Peat Marwick Main & Co.</u>, 923 F.2d 265, 270 (3d Cir. 1991) (quoting <u>United Services Auto. Ass'n v. Muir</u>, 792 F.2d 356, 361 (3d Cir. 1986)) (emphasis added). "An abuse of discretion occurs when a district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." <u>P.N. v. Clementon Bd. of Educ.</u>, 442 F.3d 848, 852 (3d Cir. 2006) (quotation marks omitted), <u>petition for cert. filed</u>, 75 U.S.L.W. 3009 (U.S. June 29, 2006) (No. 06-7).

In choosing to abstain, the District Court purported to follow the language of this court's decision in <u>Semancik</u>. In that case, we stated,

> [I]t might be appropriate for a federal court sitting in equity to give consideration to the LMRDA's wish to foster internal union self-government and to refuse to grant a permanent injunction based on the vagueness of Section 10. In those instances, the proper course might be to permit the union through its decisionmaking process to

---

[7]<u>Railroad Comm'n v. Pullman Co.</u>, 312 U.S. 496 (1941).

9

> attempt to delineate and redefine a vague provision to bring it into conformity with the dictates of Section 101(a) (2). Such a discussion would be analogous to the abstention doctrine of <u>Railroad Comm'n. v. Pullman Co.</u>, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

466 F.2d at 154.  Significantly, however, the <u>Semancik</u> court did not abstain but instead proceeded to evaluate the constitutionality of a provision in the United Mine Workers' constitution.  <u>Id.</u>

The Court of Appeals for the Sixth Circuit followed <u>Semancik</u> in <u>Kuebler v. Cleveland Lithographers & Photoengravers Union Local 24-P</u>, 473 F.2d 359 (6th Cir. 1973). There, the court refused to hold the procedural provisions of the union's constitution void because it did not appear that the union had repeatedly engaged in violations of members' due process rights.  The court stated, however, that "a consistent policy of illegal application of its constitutional procedures by the Union would require such a holding by the court. . . . [W]hen freedom of speech is unreasonably affected by such a provision, either on its face, or by its application, it must be declared void." <u>Id.</u> at 364.

Abstention is generally inappropriate in cases involving facial challenges to laws or provisions that curtail free speech. <u>See</u> <u>Chez Sez III Corp. v. Township of Union</u>, 945 F.3d 628, 633 (3d Cir. 1991).  The Supreme Court has stated that it is "particularly reluctant to abstain in cases involving facial challenges based on the First  Amendment." <u>City of Houston, Tex. v. Hill</u>, 482 U.S. 451, 467 (1987).  While the free speech provisions of the LMRDA sweep less broadly than the First Amendment, <u>United Steelworkers of Am. v. Sadlowski</u>, 457 U.S. 102, 111 (1982), this court has interpreted those provisions broadly and "reiterated in broad and expansive terms the need for the courts to entertain, and enjoin, union exercise of power that chills speech protected by the LMRDA." <u>Ruocchio v. United Transp. Union, Local 60</u>, 181 F.3d 376, 387 (3d Cir. 1999); <u>see also Mallick v. International Broth. of Elec. Workers</u>, 644 F.2d 228, 235 (3d Cir. 1981) ("[T]he power of unions to adopt rules of conduct is construed narrowly, and the members'

10

right of free speech is given an expansive protection.").

The District Court's decision to abstain here is troublesome, not only because the plaintiffs allege that an overly broad constitutional provision violates their LMRDA right to free speech, but also because the decision to abstain is based on a mistake of fact. Unlike the provision at issue in <u>Kuebler</u>, the provision at issue here has been used to discipline union members at least twice. As the District Court itself noted, "[g]enerally, the repeated use of a controversial provision will preclude abstention by courts." JA at 27.

In his affidavit, plaintiff Miller averred that he had been expelled from the ILA "back in 1983 for allegedly violating Article XXVII, the same constitutional provision . . . invoked against [him] and . . . Knight in July of 2000." JA at 260. The union charged him and other ILA members with violating Article XXVII by "improperly and without any authorization whatsoever, us[ing] the name and initials of the International Longshoremen's Association (I.L.A.) in connection with [their] efforts to cause dissension with this Local, and to publicize and spread false reports concerning members of this Local to the general public." <u>See</u> <u>Caldwell v. Int'l Longshoremen's Ass'n Local 1694</u>, 696 F.Supp. 132, 135 (D. Del. 1988).[8] Miller sued the union for wrongful interference with his free speech rights in response to being charged under Article XXVIII. <u>Id.</u> at 137. The ILA's Atlantic Coast District Council eventually overturned the local union's disciplinary action. <u>Id.</u>

More recently, plaintiffs McBride and Riley received a letter from the President of the ILA, John Bowers, notifying them that their distribution of a letter notifying ILA members of a meeting of the Workers' Coalition violated Article XXVII.

---

[8]While the District Court's opinion in <u>Caldwell</u> does not refer to Article XXVII, a copy of the letter charging Miller and other ILA members with violating the ILA constitution is included in the record of that case. Those charges explicitly allege a violation of Article XXVII. <u>See</u> Complaint, Exh. B, D. Del. Civ. No. 83-00828.

11

The letter that purportedly violated Article XXVII was written on stationery headed "Workers' Coalition," and in smaller type listed Eddie McBride, Co-Chairman, I.L.A. Local 1414 (and his address) and Kenneth Riley, Co-Chairman, I.L.A. Local 1422 (and his address), and read as follows:

February 5, 2000

Dear Brethren:

The International Longshoremen's Association Local 1694 will be hosting the Workers' Coalition Summit on April 7-8, 2000 at the Wyndham Garden Hotels, 700 King Street, Wilmington, Delaware.

The schedule is as follows:

Friday, April 7, the Steering Committee will meet at 10 a.m. in Salon C.

Saturday, April 8, the General Session will commence at 10 a.m. in Salon C.

Saturday evening, a reception will be held from 6 p.m. to 8 p.m. in Salon D.

A continental breakfast will be available on Friday and Saturday mornings.

A block of fifty (50) rooms has been reserved for Thursday, April 6 through Saturday, April 8, 2000. To make reservations, please call the hotel at (302) 655-0400 and reference the Workers' Coalition. The room rate is $85 per night single or double occupancy, plus tax. Cut-off date for reservations is March 13, 2000. After March 13, all rooms will be at the prevailing rate. Please note that check-in is 3 p.m. and check-out is 12 noon.

If you have any questions please do not hesitate to contact Eddie McBride or Kenneth Riley.

12

We look forward to seeing you in Delaware.

JA at 229.

Based on this letter, Bowers wrote to plaintiffs informing them that "neither the 'Workers' Coalition' nor the 'Longshore Workers' Coalition' has been authorized to use the ILA logo . . . in connection with the activities of any such organizations." JA at 246. Thus, Article XXVII appears to have served as the basis for curtailing union members speech at least twice. The District Court offered no discussion of these facts, and its conclusion that Article XXVII has not been invoked before is clearly erroneous.

The chilling effect of Article XXVII was discussed in the affidavit and testimony of plaintiffs' expert witness, Herman Benson, a long-time observer and commentator on the American labor scene.[9] Benson stated that, in his experience, "few if any other major American unions have in their constitutions provisions like the ILA's Article XXVII." JA at 208. He stated that candidates for union office routinely mention the union in which they are running and say something about the union and that union officials or activists who participate in public affairs or on charity boards commonly identify the union bodies to which they belong. Id. Benson also testified that it was unreasonable to require those who may be critical of the union to seek advance permission for use of the union's name in their activity, "especially in the union where as I believe there's been a climate of fear." JA at 227-227A. In asking for such permission, independents would mark themselves as troublemakers and subject themselves to possible retaliation. Id.

---

[9]Herman Benson has been an observer of the internal affairs of many labor unions for over 40 years. He is the author of two books, Democratic Rights for Union Members: A Guide to Internal Union Democracy (1979); Rebels, Reformers and Racketeers: How Insurgents Transformed the Labor Movement (2004), and three chapters in studies of the American labor movement edited by respected academicians. He is the author of hundreds of news articles and editorials on union democracy and internal affairs and has testified at least twice before Congress.

13

at 227A.

Moreover, we note also that plaintiff McBride submitted an affidavit stating that the union's charges against Knight and Miller pursuant to Article XXVII have "had a significant chilling effect on the willingness of ILA members to join or openly support the Workers' Coalition." McBride Aff. at 7. As noted earlier, this court has "reiterated in broad and expansive terms the need for the courts to entertain, and enjoin, union exercise of power that chills speech protected by the LMRDA." Ruocchio, 181 F.3d at 387.

The ILA argues that it seeks to prevent use of its name to endorse products or causes that it does not support. That is, of course, permissible. However, our examination of the letter that incurred the wrath of the ILA officials (set forth in full supra) discloses that the ILA names and abbreviation were used in the letter merely as identification. Because Article XXVII can be construed and used to prohibit such innocuous references to the ILA, it is unreasonable on its face.

Thus, we conclude that the District Court should not have abstained on this issue, and remand for further proceedings. On remand, the District Court can direct a narrowing of Article XXVII so that it applies only to prevent misuse of the ILA name.

B. Due Process Claim

Section 101(a)(5) of the LMRDA guarantees all members of labor organizations "a full and fair hearing" before they can be disciplined (except for nonpayment of dues). See 29 U.S.C. § 411(a)(5). Knight asserts that his right to a fair hearing was violated because the committee that conducted the hearing refused him permission to tape-record the hearing and because the committee was biased.

The issue of whether a union must permit an individual who has been charged with a violation to record his or her disciplinary hearing is an issue of first impression for this court. It is a question of law over which we exercise plenary review. We have stated that "[w]hat constitutes a full and fair hearing in

14

a union disciplinary proceeding must be determined from the traditional concepts of due process of law, the common law precepts governing the judicial control of internal union affairs and the sparse case law since the adoption of the LMRDA." Falcone v. Dantinne, 420 F.2d 1157, 1165 (3d Cir. 1969).

Here, the District Court did not determine whether traditional concepts of due process of law include the right to record a disciplinary hearing. Instead, it held that because Knight "has not cited any statute, bylaws, or procedural rules requiring that an official record of the hearing must be allowed, . . . the absence of a recording is insufficient to constitute a violation of Mr. Knight's right to a full and fair hearing under section 101(a)(5)." JA at 13-14. We find the District Court's reasoning unpersuasive. Knight's failure to cite a statute, bylaws, or procedural rules requiring that he be allowed to record his disciplinary hearing is not dispositive of his claim. Rather, we must determine whether barring Knight from recording the hearing is inconsistent with traditional concepts of due process.

"Due process is flexible and calls for such procedural protections as the particular situation demands in order to minimize the risk of error." Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 421 (3d Cir. 2000) (quotation marks and punctuation omitted). In considering a due process claim against the government, "we look to the private interest, the governmental interest, and the value of the available procedure in safeguarding against an erroneous deprivation." Id. Here, in order to address Knight's claim against the union, we balance Knight's interest in recording against the union's interest in prohibiting recording, and also consider the value of recording in safeguarding against errors.

In this case, permitting Knight to record the proceedings would have served to minimize errors. For example, in its 2003 opinion granting in part the ILA's motion for summary judgment, the District Court refers to the disciplinary committee as having noted that Knight engaged in "solicitation of funds" on behalf of the Workers' Coalition in conjunction with the ILA logo or the Local 1694 name. See Knight v. Int'l

<u>Longshoremen's Ass'n</u>, 286 F. Supp. 2d 360, 363 (D. Del. 2003).  Because we do not have a transcript of the hearing we do not know the basis for the committee to have characterized Knight's receipt of the donation from Adam McBride (admittedly improper under the statute) as a "solicitation."  We do know that Adam McBride's deposition testimony for purposes of the trial unequivocally denied that Knight solicited the $500.[10]

---

[10]Deposition of Adam McBride:

Q.  Okay.  Who initiated the conversations between you and Mr. Knight?

A. I did.

Q.  Okay. And how did you go about initiating those discussions?

A.  I was in 1694's hiring hall on other business and saw a flyer, a poster, on their bulletin board regarding a Workers' Coalition meeting being hosted by the local.  And so I volunteered to assist or support our local, the local, in their hosting duties.

Q.  Okay. Did you initiate that offer?

A.  Yes, I did.

Q.  Did Mr. Knight solicit your support in any way before you initiated it?

A.  No.

Q.  Did you meet with Mr. Knight personally or speak on the phone with him?

A.  My recollection is that I spoke on the phone with him.

Q.  Mm-hmm.  And do you remember what you said?

16

As the Court of Appeals for the Second Circuit has noted:

> Union disciplinary proceedings . . . are comparable in several important respects to a criminal trial, where credibility is crucial and secrecy is utterly foreign to our concepts of fairness. As in criminal trials, witnesses in union disciplinary proceedings are more likely to testify truthfully and union boards more likely to conduct themselves properly if they know that an accurate record of their testimony can be scrutinized by others than if the sole record consists of sketchy notes made by a union official sympathetic to the union management.

Rosario v. Amalgamated Ladies' Garment Cutters' Union, 605 F.2d 1228, 1242 (2d Cir. 1979). We agree. See Pawlak v. Greenawalt, 464 F.Supp. 1265, 1271 (M.D. Pa. 1979) ("[I]n the usual case, a party should not be denied the opportunity to record proceedings which might result in sanctions being imposed against him by his union.");[11] cf. Flaim v. Med. Coll. of Ohio, 418 F.3d 629, 636 (6th Cir. 2005) ("While due process may not impose upon the university the requirement to produce a record in all cases, fundamental fairness counsels that if the university will not provide some sort of record, it ought to permit the

---

A. Not specifically, but I was interested in supporting the local in hosting this group.

JA at 232-33.

[11]In spite of its conclusion that a union member should be permitted to record a disciplinary hearing, the district court in Pawlak concluded that no recording was merited. The plaintiff had instituted suit against the union prior to exhausting intra-union measures as required by the union's constitution. Because the plaintiff had violated the union constitution, the union brought disciplinary proceedings against him. The plaintiff did not dispute that he had filed suit and violated the union constitution; therefore, the district court found that the recording "would be of little value to the Court in determining whether Pawlak's statutory rights were violated in this case." Id. at 1271.

accused to record the proceedings if desired.").

In addition, a full record of disciplinary proceedings would be useful for courts reviewing claims regarding those proceedings. The ILA does not offer any explanation of its interest in prohibiting such a recording. Given the value of a recording in establishing key facts and thus minimizing error on review, and the fact that the ILA has offered no compelling reasons for prohibiting recording of union disciplinary proceedings, we hold that in such situations the due process provisions of the LMRDA require that a party subject to union disciplinary hearings be permitted to record those hearings at his or her own expense in a nonintrusive manner when the union itself produces no official recording. This is, at most, a minimum intrusion on internal union procedure, as we do not hold that unions must expend their own resources on recording their disciplinary hearings.

The ILA raises numerous arguments urging us to affirm the District Court's decision. We find these arguments unconvincing. We have already rejected the ILA's contention that the District Court was correct because Knight cites to no statute or bylaw that requires recording. The ILA also argues that because there are no issues of disputed fact, no recording was necessary. This contention clearly lacks merit. Not only is there a dispute as to whether Knight "solicited" funds from Adam McBride, but the parties dispute whether the ILA offered Knight an adjournment to prepare his defense. This issue was tried and the District Court found the ILA witnesses more credible and therefore found that Knight had been offered an adjournment to prepare his defense. It was on the basis of this finding that the District Court dismissed Knight's claim that his right to a fair hearing was violated.[12] However, the record on

---

[12]The ILA contends that the offer of adjournment would have been made before any recording began. The basis for this assertion is entirely unclear and thus we reject it. Moreover, even if the ILA's post-hoc rationalization is correct, it does not undermine our holding that permitting a recording of the procedure is required by due process.

18

appeal does not contain the background material necessary for appeal of this issue.

The ILA cites numerous cases holding that a refusal to record a disciplinary hearing does not violate due process. <u>See, e.g.</u>, <u>Jewett v. Comm'r of Internal Revenue</u>, 292 F. Supp. 2d 962, 966 (N.D. Ohio 2003); <u>Eaton v. Comm'r of Internal Revenue</u>, 43 T.C.M. (CCH) 217, 1981 WL11111 (T.C. 1981); <u>King v. Town of Hanover</u>, 959 F. Supp. 62 (D.N.H. 1996), <u>aff'd</u>, 116 F.3d 965 (1st Cir. 1997). <u>Jewett</u> and <u>Eaton</u> are inapposite because they involved IRS collection due process proceedings. These proceedings "are informal in nature and do not require the Appeals officer or employee and the taxpayer, or the taxpayer's representative, to hold a face-to-face meeting." <u>Jewett</u>, 292 F. Supp. 2d at 966; <u>see also</u> <u>Eaton</u>, 1981 WL 11111 (noting that "recordation generally has an adverse [e]ffect on the informal setting of such meetings and may inhibit the free exchange of information and opinions").

Informal IRS-taxpayer meetings where there may be valid confidentiality concerns are distinguishable from a formal disciplinary proceeding, which is at issue in this case. Article XVIII of the ILA Constitution provides for a trial of union members who are charged with violations. It states, "The accused shall be afforded a full and fair hearing and shall have the right to appear at such hearing, produce and cross-examine witnesses, file statements, and be represented by any member of the I.L.A. in good standing. Decisions shall be rendered after the close of the hearing and shall be in writing." JA at 109. Article XIX provides the right to appeal.

It follows that the ILA's refusal to permit Knight to record his disciplinary hearing violated the due process provision of the LMRDA.[13]

_____

[13]Although there may be some disciplinary hearings at which there is no factual dispute, <u>see</u> note 10 <u>supra</u>, it is difficult to predict whether that is likely to occur before the hearing. It follows that when a union or union member seeks to record, and is willing to bear the cost, there is no reason not to allow it.

19

Plaintiffs also challenge the District Court's conclusion that the disciplinary hearing committee was not biased. The LMRDA's due process guarantee includes the right to a hearing before an unbiased committee. See Falcone, 420 F.2d at 1166 ("The statutory 'full and fair hearing' language appears to be without ambiguity and therefore requires no in depth analysis of legislative history to determine the congressional intent. An essential element of a fair hearing within the concept of due process of law is the impartiality, *i.e.*, openmindedness, of the trial body.") (footnote omitted); see also Goodman v. Laborers' Int'l Union of N. Am., 742 F.2d 780, 783 (3d Cir. 1984) ("An essential element of a fair hearing is an impartial decisionmaker.").

Knight contends his right to a full and fair hearing pursuant to LMRDA § 101, 29 U.S.C. § 411(a)(5), was violated by inclusion on the hearing committee of an ILA vice-president who was biased against Knight based on his negative feelings about the Workers' Coalition. The District Court rejected this claim, finding that "[b]efore the hearing, none of the Committee members had any knowledge of the facts underlying the charges and received no instructions form [sic] the ILA as to how the matter should be decided." JA at 8A. It further found that "[e]ach of the Committee members testified that Mr. Knight's membership in the Workers' Coalition had no effect on his decision." Id. at 14. The Court concluded that "[i]n these circumstances, something more, such as a statement of bias or other conduct evidencing actual bias, is necessary." Id.

According to Knight, the District Court committed clear error in concluding that the committee was unbiased. We agree. Committee Member Horace Alston clearly had antipathy towards the Workers' Coalition. Alston wrote a letter to ILA President Bowers on April 17, 2000 (four months before Knight's hearing) in which he stated (quoted as it appears in the original):

> I have received several letters, with reference to a meeting of ILA members, who have named themselves the WORKERS COALITION

20

. . . .

       I am not a member of this group, <u>workers coalition</u>. I hope this group, will not achieve success in what ever their goal are. If it is to separate this union. <u>We must never divide this union</u>. Our enemy are looking for a way to keep us in fighting among our selves. We have came to far together. We are strong. We shall never let someone or any one separate this union.

JA at 267-68.

       Alston reaffirmed his dislike for the Workers' Coalition at trial. On cross- examination, the following exchange occurred:

> Q: Had you heard about [the Workers' Coalition] before you wrote the letter?
>
> A: I just heard there was a group of people that were starting . . . an association . . . within the ILA
>
> Q: And that is a bad thing?
>
> A: I believe that it was bad.

JA at 199.

       Even more disturbing, Alston admitted at trial that his negative impression of the Workers' Coalition affected his judgment in Knight's case. On direct examination, the following exchange between Alston and the ILA's lawyer occurred:

> Q: In the course of [the disciplinary hearing], did [Knight] appear to know what was going on?
>
> A: Yes.
>
> Q: Mr. Knight?
>
> A: Yes.

21

Q: And that Mr. Knight was a member of an organization called the Workers' Coalition?

A: It appeared he w[as].

Q: Did that have any affect [sic] on your decision to discipline him?

A: <u>Yes, it did</u>.

JA at 192-93 (emphasis added).

"The prejudgment by a single decisionmaker in a tribunal of limited size [here a committee of three] is sufficient to taint the proceedings and constitute a denial of the right to a full and fair hearing under the LMRDA." Goodman, 742 F.2d at 784. Alston's prejudgment of Knight's case clearly violated Knight's due process rights.[14] The ILA's failure to provide Knight with an impartial hearing committee constitutes a violation of § 101(a)(5) of the LMRDA.

C. Section 105 of the LMRDA

LMRDA § 105 provides that "[e]very labor organization shall inform its members concerning the provisions of this chapter." 29 U.S.C. § 415. The ILA had been out of compliance with § 105 until July 2001 when, several months after plaintiffs

---

[14]We note that the District Court's finding that "none of the Committee members had any knowledge of the facts underlying the charges and received no instructions form [sic] the ILA as to how the matter should be decided" is also clearly erroneous. JA at 8A. Before any charges against Knight were filed, hearing committee members all received a copy of a letter from Paylor (who eventually filed charges against Knight) to the president of the South Atlantic and Gulf Coast Division (SAGCD). This letter, which attempted to "clarify" an apparent "misunderstanding" about whether the "S.A.G.C.D.  is involved with the Workers' Coalition," discussed the conduct underlying the charges against Knight in some detail. JA at 263.

22

in this case amended their complaint to include a § 105 claim, it took its initial steps to come into compliance. ILA President Bowers sent a copy of a United States Department of Labor ("DOL") summary of the LMRDA to each ILA local, with instructions to post the summary in union and hiring hall bulletins. The letter also stated that locals could take additional steps to disseminate the DOL summaries.

In considering plaintiffs' claim that the ILA's compliance with the requirements of § 105 was still inadequate, the District Court noted that "[t]here has been little guidance on what methods of informing union members of their LMRDA rights are sufficient under LMRDA § 105." JA at 27. Based on its interpretation of the small body of existing case law, the District Court concluded that the ILA's distribution of "Department of Labor summaries of the LMRDA to its locals and instruct[ion to] the locals to post the summaries in their offices and hiring halls and to otherwise disseminate the summaries to union members," id., met the requirements of § 105.

Plaintiffs contend that the ILA's attempt to comply with § 105 is deficient. They argue that when the ILA really wants to get information to its members, it "sends the communication in bulk to locals with instructions to mail a copy to every member . . . [.] it includes the communication in its quarterly newsletter, which is mailed to every member." Appellant's Br. at 27. The ILA argues that posting the summaries of the LMRDA is an adequate means of notifying members of the ILA of the LMRDA.[15]

_____

[15]In addition, ILA claims that because union members are required to exhaust intraunion remedies before bringing suit, and that plaintiffs failed to do so here, this claim is barred. Because the ILA failed to raise exhaustion in its Answer, this affirmative defense is waived. See, e.g., McCoy v. Board of Trustees of Laborers' Int'l Union, Local No. 222 Pension Plan 188 F. Supp. 2d 461, 467 (D.N.J. 2002) ("Failure to exhaust administrative remedies is generally an affirmative defense subject to waiver."), aff'd, 60 Fed. Appx. 396 (3d Cir. March 25, 2003).

There are only a few reported decisions interpreting § 105 of the LMRDA.  In Thomas v. Grand Lodge of Int'l Ass'n of Machinists & Aerospace Workers, 201 F.3d 517 (4th Cir. 2000), the Court of Appeals for the Fourth Circuit held that a single notice of the LMRDA, which was issued in 1959, was insufficient to meet the requirement of § 105.  In reaching its conclusion, the Court noted:

> The LMRDA's protections are meaningless . . . if members do not know of their existence.  Simply put, if a member does not know of his rights, he cannot exercise them.  This is where section 105 kicks in.  Section 105 is the statute's informational lynchpin, requiring labor organizations to inform members what rights Congress has granted them.

Id. at 520.  On remand, the district court ordered the union to send all new members a copy of the Department of Labor's summary of the LMRDA as part of the union's manual, to publish the summary in three issues of the union's journal, and to post the summary on the union's website.  Thomas v. Grand Lodge of Int'l Ass'n of Machinists & Aerospace Workers, Civ. No. PJM 97-2001 (D. Md. Sept. 19, 2000).

The Court of Appeals for the D.C. Circuit interpreted § 105 more recently, in Callihan v. United Ass'n of Journeyman & Apprentices of Plumbing & Pipe Fitting Indus., No. Civ. A. 00-2988, 2002 WL 31250298 (D.D.C. Aug. 13, 2002), aff'd, 349 F.3d 704 (D.C. Cir. 2003).  In that case, the district court found that a union that published a copy of the Labor Department's summary of the LMRDA in its journal, agreed to do the same in 2004 and 2008, and modified its welcome letter to new members to include the summary, had met the requirements of § 105.  The appellants argued the union needed to do more, such as append the LMRDA summary to the union's constitution.  349 F.3d at 706-07.

The Court of Appeals rejected the appellants' arguments, holding that "only essential standards should be imposed by legislation, and that in establishing those standards, great care should be taken not to undermine union self-government."  Id. at

707 (quoting <u>United Steelworkers of Am. v. Sadlowski</u>, 457 U.S. 102, 117 (1982)).  The court

> refuse[d] to transform § 105 into a detailed code of union conduct. Unions may choose among measures that meet the minimum criterion of actual notice. So long as the union makes a good-faith attempt to reach its current members through means that enable the members to learn of the LMRDA's provisions, § 105 is satisfied, even if more could have been done.

<u>Id.</u>

While neither the Fourth Circuit Court of Appeals nor the Court of Appeals for the D.C. Circuit have held that § 105 requires any specific notification procedures, the procedures adopted by the unions in those cases provided more notice than those followed by the ILA.  In its decision in this case, the District Court does not refer to the testimony of plaintiffs' expert witness, Herman Benson, that notices in hiring halls and offices will not ensure that all members of the ILA have notice of the provisions of the LMRDA.  Benson stated:

> [T]he idea that the Locals should inform their members by posting this on the bulletin board is totally preposterous in a Union which has a long Union history of infiltration by organized crime, because you are asking members to go into the Union office and in view of the officers of the Locals to stand there and read the provisions of this Act and thereby mocking[sic] themselves as to what would be, in the view of the officers, potential troublemakers. That's preposterous. . . .

JA at 214-15.

The DOL has recently imposed notification provisions upon federal sector unions, which are exempt from the LMRDA. These unions are instead subject to the Civil Service Reform Act of 1978 ("CSRA").  The CSRA standards of conduct regulations make certain provisions of the LMRDA applicable to federal sector labor organizations but do not incorporate § 105 of the

25

LMRDA.  In an order to remedy this omission, the DOL requires that a union:

> inform its members concerning the standards of conduct provisions of the Acts and the regulations in this subchapter.  Labor organizations shall provide such notice to members by October 2, 2006 and thereafter to all new members within 90 days of the time they join and to all members at least once every three years.  Notice must be provided by hand delivery, U.S. mail or e-mail or a combination of the three as long as the method is reasonably calculated to reach all members.   Such notice may be included with the required notice of local union elections.  Where a union newspaper is used to provide notice, the notice must be conspicuously placed on the front page of the newspaper, or the front page should have a conspicuous reference to the inside page where the notice appears, so that the inclusion of the notice in a particular issue is readily apparent to each member.

29 C.F.R. § 458.4 (2006).

When the DOL first proposed this regulation, it noted:

> In Thomas v. International Ass'n. of Machinists, 201 F.3d 517 (4th Cir. 2000), a labor organization took the position that a notice provided forty years ago, shortly after the passage of the LMRDA, satisfied its notice obligations under the LMRDA. The Court of Appeals rejected this position, stating that the democratic principles in the statute "are meaningless * * * if members do not know of their existence [because] if a member does not know of his rights, he cannot exercise them." Machinists, 201 F.3d at 520.

> The reasoning set forth above in Machinists, an LMRDA case, applies with equal force to unions governed by the CSRA. Furnishing a notice of the CSRA standards of conduct provisions furthers the fundamental policies of federal labor law.  Union members aware of these provisions are more likely to monitor their labor

26

organization and act to remedy any breach in the integrity of that organization. Union members who are not informed or aware of their rights are less able, or even likely, to take such action.

Standards of Conduct for Fed. Sector Labor Organizations, 69 Fed. Reg. 64226-01, 64227 (proposed Nov. 3, 2004).

Although we are reluctant to interfere with internal union operations unless required by the governing statute or particular circumstances, we find the DOL's reasoning persuasive. In order to give substance to union members' right to be informed of the provisions of the LMRDA, we hold that the ILA must take steps to ensure to the extent possible that all new members of the ILA personally receive a copy of the DOL summary. We leave to the District Court on remand the details as to how this can best be accomplished, although we note that the DOL proposals would appear to satisfy the statutory requirement. Because "good faith" alone is insufficient, we will reverse the District Court's decision holding that the ILA is not in violation of § 105 of the LMRDA.

## III.

In conclusion, we will reverse the decision of the District Court and remand for further proceedings in accordance with this opinion. On remand, the District Court should consider, in conjunction with the parties, the manner in which Article XXVII can be narrowed. The District Court also should consider the appropriate remedy to be accorded Knight for the ILA's violation of his due process rights. The entire matter is remanded to the District Court to consider any additional remedy that will effect the holdings herein.