# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued May 4, 2009          Decided June 23, 2009

No. 08-7056

MICHAEL J. QUIGLEY ET AL.,
APPELLANTS

v.

VINCENT GIBLIN AND
INTERNATIONAL UNION OF OPERATING ENGINEERS,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cv-00600)

*Paul Alan Levy* argued the cause for the appellants.

*Leon Dayan* argued the cause for the appellees. *Robert M. Weinberg* and *Matthew H. Clash-Drexler* were on brief.

Before: HENDERSON, BROWN and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: The International Union of Operating Engineers (Union) adopted a Resolution requiring all candidates for local union offices and their supporters to include a password protection function on

their campaign websites limiting access to Union members. Michael Quigley, together with four other Union members (collectively Quigley), brought an action in district court seeking a permanent injunction prohibiting the Union from enforcing the Resolution under section 101(a)(2) of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 411(a)(2). On cross-motions for summary judgment, the district court granted summary judgment in favor of the Union. *Qui*[g]*ley v. Giblin*, 582 F. Supp. 2d 1, 14 (D.D.C. 2008). For the reasons set forth below, we affirm.

## I.

The Union is an international labor organization that represents primarily operating engineers who work as heavy equipment operators, mechanics and surveyors in the construction industry and stationary engineers who work in operations and maintenance. It has approximately 396,000 members and 138 chartered and autonomous local unions in Canada and the United States. The local unions range in size from 14 members to over 40,000 members. Elections for local union office are held in August and nominations are made no earlier than the May before the election.

In January 2007, the General Executive Board[1] adopted the Campaign Website Resolution, which provides in part:

> NOW THEREFORE BE IT RESOLVED THAT the General Executive Board, in order to assure the fullest expression of free speech by candidates in Local Union elections while protecting the Local Unions from adverse actions by employers, directs that, starting with Local Union elections to be held in 2007, Local Unions and their election committees shall require all

---

[1]The General Executive Board governs the Union except when the General Convention is in session (at five-year intervals).

candidates and their supporters who have set up or wish to set up campaign websites to include a password protection function; and

BE IT FURTHER RESOLVED THAT the International Union shall work with the Local Unions and their election committees to establish appropriate password protection mechanisms using members' register numbers or another appropriate mechanism to identify membership status.

Campaign Website Resolution at 1 (adopted Jan. 2007) (Resolution) (Joint Appendix (JA) 295). In the prefatory portion, the Resolution explained that campaign websites "allow non-members, including employers, access to frequently sensitive information about the Local Unions" and that "there have been instances where employers have misused information obtained from candidates' websites to the detriment of . . . Local Unions in organizing campaigns and contract negotiations." *Id.* In a letter dated February 12, 2007 and sent to all local union business managers, the Union General President stated that the Resolution "will not in any way limit the content of what is said on such websites" but "will merely attempt to assure that sensitive information concerning Local Union affairs is shared among members, and is not available to employers and others with interests contrary to those of the Local Unions." Letter from Vincent J. Giblin, Union General President, to All Local Union Business Managers at 2 (filed May 12, 2007) (JA 297). The Resolution applies to incumbents running for reelection as well as challengers. Oral Argument at 26:04, *Quigley v. Giblin*, No. 08-7056 (argued May 4, 2009) (Union counsel: "[The Resolution] absolutely applies to incumbents."). Although official local union websites were not expressly covered by the Resolution, the Giblin letter directed local unions to review their websites to ensure that sensitive information was password protected. Letter from Vincent J. Giblin at 2 (JA 297). The

letter announced that the Resolution would become effective on April 15, 2007. *Id.* On March 29, 2007, the appellants filed their complaint in the district court seeking declaratory and injunctive relief. Compl. at 11, *Qui*[g]*ley v. Giblin*, 582 F. Supp. 2d 1 (D.D.C. Mar. 29, 2007) (No. 07-cv-600) (Compl.). On April 2, 2007, the General Executive Board changed the Resolution's effective date to July 1, 2007.

Shortly thereafter, the General Executive Board adopted guidelines to implement the Resolution. Letter from Vincent J. Giblin, Union General President, to All Local Union Business Managers, Attachment (filed May 12, 2007) (Guidelines) (JA 301). The Guidelines stated that for the upcoming elections, the Union planned to retain an independent information technology consulting firm to assist Union members in implementing the Resolution. *Id.* The Guidelines authorized the consulting firm to waive compliance with the Resolution if it determined, "based on its technical expertise and in its sole discretion," that compliance "would require a significant expenditure of money or significant delay." *Id.* They also stated that a Union member could request an opinion from the Union General President as to whether the Resolution applied to a particular website. Giblin opined at his deposition that a campaign website home page did not need to be password protected if it was "announcing the candidacy, a picture, a list of potential candidates" or if it contained a "short biography" of the candidate and "his running mates" but that other web pages on the site would require protection. Tr. of Dep. of Vincent J. Giblin at 45, 53 (filed May 28, 2007) (Giblin Dep. Tr.) (JA 323, 325a).

According to the Union's expert witness, the Union intended to use a remote authentication password protection system. Decl. of Joanna M. Pineda at 2 ¶ 9 (filed May 12, 2007) (Pineda Decl.) (JA 190). Under this system, the person setting up a campaign website includes "a few lines of programming," referred to as "script," in each web page to be password

protected. *Id.* at 3 ¶ 11 (JA 191). If a Union member attempts to view a password protected web page, he is directed to a third-party website and prompted to enter his name and Union membership number as they appear on his Union card. The authentication page contains a disclaimer that the third party "will not log any identifying information (register number or name) about [Union] members seeking access to any particular campaign Web site, or the IP address (and any other information that might indicate the geographic location) of any member seeking to access any particular web site." Ex. E to Affidavit of Paul Alan Levy at 1 (filed May 28, 2007) (JA 446). The third party will verify the Union member's information against a list of Union members' names and membership numbers supplied by the Union. If the information is correct, the Union member will be "automatically redirected back to the original website." Pineda Decl. at 2 ¶ 9 (JA 190).

Quigley's complaint sought a permanent injunction ordering the Union to revoke the Resolution and to refrain from enforcing it and a declaratory judgment voiding the Resolution. Compl. at 11. In May 2007, both parties filed motions for summary judgment. The district court granted summary judgment in favor of the Union. *Qui*[g]*ley*, 582 F. Supp. 2d at 14. Quigley timely appealed pursuant to 28 U.S.C. § 1291.

## II.

We review a district court's summary judgment *de novo*. *Defenders of Wildlife v. Gutierrez*, 532 F.3d 913, 918 (D.C. Cir. 2008). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We view the evidence in the light most favorable to the nonmoving party. *U.S. Postal Serv. v. Am. Postal Workers Union*, 553 F.3d 686, 692 (D.C. Cir. 2009).

**A.**

Quigley argues that the Resolution violates section 101(a)(2) of the LMRDA, which provides:

> Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided*, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

29 U.S.C. § 411(a)(2) (emphasis in original). In *United Steelworkers of America v. Sadlowski*, 457 U.S. 102 (1982), the United States Supreme Court set forth a two-step inquiry "[t]o determine whether a union rule is valid under [section 101(a)(2)]." 457 U.S. at 111. First, we must "consider whether the rule interferes with an interest protected by the first part of § 101(a)(2)." *Id.* "If it does, we then determine whether the rule is 'reasonable' and thus sheltered by the proviso to § 101(a)(2)." *Id.* The "critical question" under the second step is "whether a rule that partially interferes with a protected interest is nevertheless reasonably related to the protection of the organization as an institution." *Id.* at 111-12. "Union rules . . . are valid under § 101(a)(2) so long as they are reasonable; they need not pass the stringent tests applied in the First Amendment context." *Id.* at 111.

It is undisputed that section 101(a)(2) protects a union member's right to communicate with other members. Appellants' Br. at 44-45; Appellee's Br. at 34-35; *see Helton v. NLRB*, 656 F.2d 883, 895 (D.C. Cir. 1981) (section 101(a)(2) "'designed to protect the rights of union members to discuss freely and criticize the management of their unions and the conduct of their officers.'" (quoting *Salzhandler v. Caputo*, 316 F.2d 445, 448-49 (2d Cir. 1963))). Quigley asserts that the Resolution interferes with a candidate's ability to communicate with Union members in several ways. First, according to both parties' experts, internet search engines cannot access password protected pages, which, Quigley asserts, will limit a Union member's ability to find a campaign website using search engines. The Union's expert noted, however, that internet search engines will be able to search a campaign website's unprotected home page, which, according to Giblin, may contain basic information about the candidate and election, thereby allowing members to locate the campaign website. Moreover, Quigley asserts that Union members will be unable to receive automatic updates regarding changes to campaign websites using Real Simple Syndication (RSS) feeds. According to the Union's expert, an internet user cannot, without "a high level of technological ability," use an RSS feed to receive automatic notifications of updates to a password protected page. Supplemental Decl. of Joanna M. Pineda at 2 ¶ 3 (filed June 9, 2007) (Pineda Supp. Decl.) (JA 194b). The Union asserts therefore that a Union member's inability to use RSS is irrelevant because no evidence shows that Union members will use RSS feeds to monitor campaign websites. Quigley through his expert also claims that certain website hosts do not support scripting, including blogging platforms, YouTube and social networking sites such as Facebook, thus precluding candidates and their supporters from using those hosts to set up their campaign websites or post campaign material. The Union responds that its members have alternative web hosts that

support scripting and Quigley acknowledges that "a number of" website hosts allow for scripting. Appellee's Br. at 41-43; Appellants' Br. at 19. In addition, Quigley, again through his expert, maintains that password protection will deter some Union members from viewing the campaign websites either because they will not have their log-in information readily available or because they fear that Union incumbents will find out that they viewed an insurgent's campaign website. The Union's expert opined that a password requirement would "not likely" deter Union members from accessing campaign websites, Pineda Decl. at 5 ¶ 14 (JA 193), but Quigley's expert disagreed. Decl. of Mark Brenner at 8-9 ¶¶ 23-25 (filed May 28, 2007) (JA 456-57). The Union also notes that the remote authentication page contains a disclaimer that it "will not log any identifying information" about Union members. Ex. E to Affidavit of Paul Alan Levy at 1 (filed May 28, 2007) (JA 446). Viewing the evidence in a light most favorable to Quigley, we conclude that the Resolution may interfere with a Union member's "right . . . to express any views, arguments, or opinions," 29 U.S.C. § 411(a)(2), because it limits the means by which a local union candidate may disseminate his message and may deter some members from viewing his campaign website.[2] We note, however, that although the Resolution "does affect rights protected by the statute, as a practical matter the impact may not be substantial" for the reasons stated by the Union. *Sadlowski*, 457 U.S. at 113.

---

[2]Quigley also asserts that section 101(a)(2) encompasses a right to communicate with nonmembers as well as members. Appellants' Br. at 37-44. Assuming arguendo that it does encompass such a right, the question remains whether the Resolution is reasonable. *See Sadlowski*, 457 U.S. at 111 ("[W]e first consider whether the rule interferes with *an* interest protected by the first part of § 101(a)(2). If it does, we then determine whether the rule is 'reasonable' and thus sheltered by the proviso to § 101(a)(2).") (emphasis added).

We now turn to whether the Resolution is "reasonably related to the protection of the [Union] as an institution." *Id.* at 111-12. In *Sadlowski*, the Supreme Court held that a union "outsider rule" prohibiting union members from accepting campaign contributions from nonmembers was permissible under the proviso to section 101(a)(2). *Id.* at 121. Relying on legislative history, the Court concluded that the "outsider rule" "serves a legitimate purpose that is clearly protected under the statute," specifically "minimiz[ing] outsider influence" and enabling the union "to maintain control over its own affairs." *Id.* at 115-117. It then rejected the argument that the "outsider rule" was nonetheless unreasonable because the union could have adopted less restrictive alternatives. *Id.* at 118-119. The Court concluded that the alternatives would not have addressed the problem of outsider influence as effectively and that the union had a "reasonable basis for its decision to impose a broad ban." *Id.* at 118.

The Union argues that the Resolution is designed to prevent employers from obtaining sensitive Union information from campaign websites and using it to undermine local union organizing campaigns or to gain an advantage in contract negotiations. Section 101(a)(2) permits a union "to adopt and enforce reasonable rules as to . . . [every member's] refraining from conduct that would interfere with its performance of its legal or contractual obligations," 29 U.S.C. § 411(a)(2), and the union has a legal obligation to bargain collectively with an employer, 29 U.S.C. § 158(b)(3), (d). The Secretary of the United States Department of Labor recognized a union's interest in keeping certain information confidential when it excepted from itemized disclosure on annual union financial reports "[i]nformation that might provide insight into the reporting union's organizing strategy" or "that might provide a tactical advantage to parties with whom the reporting union . . . is engaged or will be engaged in contract negotiations." Labor Organization Annual Financial Reports, 68 Fed. Reg. 58,374,

58,387 (Oct. 9, 2003). According to the Resolution, campaign websites "allow non-members, including employers, access to frequently sensitive information about the Local Unions" and "there have been instances where employers have misused information obtained from candidates' websites to the detriment of . . . Local Unions in organizing campaigns and contract negotiations." Resolution at 1 (JA 295). Because the Resolution enables the Union to organize and bargain more effectively by keeping sensitive Union information from employers, we conclude that it "serves a legitimate and protected purpose" under section 101(a)(2)'s proviso. *Sadlowski*, 457 U.S. at 117. Moreover, in considering the reasonableness of the Resolution, we note that it is not viewpoint-based and that it leaves open alternative methods of communication with the public. The Resolution simply establishes a members-only forum for those who are eligible to vote in union elections.

Quigley argues, however, that the Resolution is unreasonable because the Union has not offered evidence of any harm resulting from sensitive information being posted on campaign websites. Section 101(a)(2) does not impose an evidentiary burden but requires only that a union rule be "reasonable." Nor did the Supreme Court impose an evidentiary burden in *Sadlowski*. In *Sadlowski*, the losing candidate for union president "received much of his financial support from sources outside the union." 457 U.S. at 104. Following the election, the union adopted the "outsider rule" "to ensure that nonmembers do not unduly influence union affairs" and because it "feared that officers who received campaign contributions from nonmembers might be beholden to those individuals and might allow their decisions to be influenced by considerations other than the best interests of the union." *Id.* at 115. While the union produced evidence of nonmember contributions to a union candidate, it had no evidence that union officers receiving such contributions were "beholden to" outside contributors once

elected. *Id.* Nevertheless, the Court concluded that the "outsider rule" was reasonable. *Id.* at 118.

In his declaration, Giblin averred that during a Union hearing in 2000 on whether a local union should be placed under supervision, he "learned that employers had been monitoring websites of [local union] candidates and were using the information found on the websites to defeat organizing campaigns and to improve their position at the bargaining table." Giblin Decl. at 5 ¶ 19 (JA 280). He also stated that a candidate in another local union's 2005 election had "posted the minutes from a local union board meeting and the meeting of the trustees of the union's pension fund on his campaign website." *Id.* at 5 ¶ 20 (JA 280). Quigley argues that Giblin's statements regarding the first incident are "[a]t most . . . hearsay" and are an insufficient basis for the Resolution. Appellants' Br. at 51. Quigley argues that the second incident involving the posting of local union board minutes on a campaign website does not indicate that those minutes posed any harm or contained any sensitive Union information. *Id.* at 55 n.7.[3] While the cited evidence may be contested, the Union's reliance on that evidence as well as its concern that harm may occur are reasonable.

Quigley also argues that the Resolution does not serve its intended purpose and thus is not "rationally related to that purpose." *Sadlowski*, 457 U.S. at 118. First, he notes that the Resolution does not require a Union member to password protect websites unrelated to local union campaigns but that nonetheless discuss union issues and does not prohibit a candidate and his supporters from publicly distributing

---

[3]Local Union meetings are open only to Union members in good standing. Constitution Governing the International Union of Operating Engineers at 84 (filed May 12, 2007) (JA 292).

campaign literature.[4]   Second, he asserts that some Union members are also employers.  Third, he asserts that employers can easily obtain a Union member's membership number and thus view password protected campaign websites using the member's information.   Quigley's assertions merely demonstrate that the Resolution does not cover all of the routes by which employers can obtain sensitive union information and that password protection is not a perfect method for preventing employers from viewing campaign websites.  To be reasonable, however, a union rule need not perfectly achieve its intended purpose.  A union need only have a "reasonable basis for its decision," which, we conclude, the Union does. *Sadlowski*, 457 U.S. at 118.  Accordingly, we conclude that the Resolution is protected by the proviso to section 101(a)(2).

## B.

Quigley also argues that the Resolution is "vague or overbroad," relying on extra-circuit precedent.  Appellants' Br. at 64 (citing *Mallick v. Int'l Bhd. of Elec. Workers*, 644 F.2d 228 (3d Cir. 1981); *Semancik v. United Mine Workers of Am. Dist. No. 5*, 466 F.2d 144 (3d Cir. 1972)).  In *Semancik*, the Third Circuit enjoined the union from sanctioning its members under a union constitutional provision that the court determined was "a threat and obstacle to free speech because it is so vague and ill-

---

[4]Nor does the Resolution prohibit or limit in any way campaign mail or e-mail to Union members.  We also note that the Union is required by law "to comply with all reasonable requests of any candidate to distribute by mail or otherwise at the candidate's expense campaign literature in aid of such person's candidacy to all members in good standing of such labor organization" and to allow "[e]very bona fide candidate . . . , once within 30 days prior to an election of a labor organization in which he is a candidate, to inspect a list containing the names and last known addresses of all members of the labor organization."  29 U.S.C. § 481(c).

defined that whenever a union member might exercise the right guaranteed to him under [section 101(a)(2)], he is in peril of violating the provision." 466 F.2d at 153-54.[5] In *Mallick*, the Third Circuit concluded that "[t]he right to speak one's views freely is so fundamental," even in the context of section 101(a)(2), "that the spectre of punishment, or the uncertainty created by a vaguely worded prohibition of speech," supported in part an injury sufficient to confer standing. 644 F.2d at 235; *see also Knight v. Int'l Longshoremen's Ass'n*, 457 F.3d 331, 338 (3d Cir. 2006) (remanding to district court to consider "alleg[ation] that an overly broad [union] constitutional provision violates [the] LMRDA right to free speech").[6] While the Third Circuit has borrowed its vagueness doctrine from First Amendment law, we are not convinced that a union member can bring a vagueness challenge to a union rule. In *Sadlowski*, the Supreme Court rejected the notion that "the scope of [section] 101(a)(2) [is] identical to the scope of the First Amendment" and noted that "First Amendment principles may be helpful [in applying section 101(a)(2)], although they are not controlling." 457 U.S. at 111. The Union, however, does not argue that

---

[5]The union constitutional provision at issue in *Semancik* provided: "[A]ny member or members resorting to *dishonest or questionable* practices to secure the election or defeat of any candidate for district office shall be tried by the district executive board and fined, suspended or expelled as the magnitude of the transgression may warrant." 466 F.2d at 147 (alteration in original and emphasis added). The court found "dishonest or questionable" vague. *Id.* at 154.

[6]The Second Circuit struck down a union constitutional provision authorizing expulsion of a member for "advocating or encouraging communism" because "[i]t is so broad that it cannot possibly be found a reasonable means for preventing Communist Party infiltration of the appellant unions." *Turner v. Air Transp. Lodge 1894*, 590 F.2d 409, 410, 412 (2d Cir. 1978).

Quigley's vagueness challenge is improper or that a different standard applies from that used in First Amendment law.

Assuming *arguendo* that the First Amendment vagueness doctrine applies in the section 101(a)(2) context, Quigley's vagueness challenge fails. The Resolution applies to "all candidates and their supporters who have set up or wish to set up campaign websites." Resolution at 1 (JA 295). Quigley asserts that "supporters" and "campaign websites" are vague terms. For example, if a union member maintained an ongoing website discussing union issues and during an election posted a message stating that he supported a specific candidate, would he be required to password protect the website under the Resolution? While "supporters" and "campaign websites" may be vague in a few circumstances, they are clear in the vast majority of circumstances. *Cf. Hill v. Colorado*, 530 U.S. 703, 733 (2000) ("[S]peculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications.'" (quoting *United States v. Raines*, 362 U.S. 17, 23 (1960))). Furthermore, in a close case, a union member may seek clarification from the Union General President. *See Trans Union Corp. v. FTC*, 245 F.3d 809, 817 (D.C. Cir. 2001) (rejecting vagueness challenge in part because administrative advisory opinion procedure existed to resolve any ambiguity).

For the foregoing reasons, we affirm the district court's grant of summary judgment to the Union.

*So ordered.*